# L. A. SMITH AND WIFE v. KINGSTON BOROUGH.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 11, 1888—Decided May 14, 1888.

1. Under the general borough act of April 3, 1851, P. L. 320, boroughs have power to require lot owners to re-lay, at their own expense, sidewalks laid originally in obedience to a borough ordinance.
2. A side-walk was laid in pursuance of an ordinance of a borough incorporated under said act. Fourteen years afterward, the side-walk being out of repair and the abutting owner non-resident, the municipal officers gave notice to repair personally to the owner's agent and by letters mailed to the owner, herself. On failure to comply, the borough re-laid the side-walk and filed a municipal claim for lien for the cost and a penalty of twenty per centum in addition: *Held*, that the plaintiff was entitled to recover in a scire facias on said claim.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 93 January Term 1888, Sup. Ct.; court below, No. 308 October Term 1885, C. P.

On July 8, 1885, a scire facias sur municipal claim, No. 6 Docket III., wherein the borough of Kingston was plaintiff and L. A. Smith and Mary H., his wife, in right of said wife, were defendants. The defendants pleaded, nunquam indebitatus.

On June 5, 1886, by agreement of parties the cause was referred to *Mr. Thomas H. Atherton*, under the act of March 23, 1870, P. L. 540, extending to Wayne and Luzerne the provisions of the act of April 6, 1869, P. L. 725, authorizing the reference of civil actions in the county of Bradford. On July 14, 1887, the referee filed the following report:

### FINDINGS OF FACT.

1. The borough of Kingston was duly incorporated under the acts of 1851 and 1856, about November 22, 1857, and its charter recorded in the proper office in Luzerne county.
2. An ordinance was duly passed and approved on April 12,

1871, providing, " That the owners of all lands fronting upon the northwesterly side of Main street, in said borough, from the borough line near Sharp's Lane to the line of the L. & B. R. R., where it crosses Main street on Plymouth road, . . . . . shall make a side- or foot-walk of not less than five feet in width, of plank or of stone flagging, along the whole of said frontage. . . . . . If plank is used, as above referred to, to be not less than two inches thick, laid crosswise of the walk, resting upon three sills running lengthwise of the walk, one near each end and one in the centre, sills to be not less than two inches thick by four inches in width, and plank to be firmly nailed to them. . . . . . On failure of any of above referred to land owners to make such side- or foot-walks within three months after the date of this ordinance, the town council shall cause such side-walk to be made, at their option using either plank or stone flagging, and collect from such owner or owners the cost of the work and materials, with twenty per centum advance thereon, in accordance with the acts of assembly in such cases made and provided."

3. Mrs. Mary H. Smith, wife of L. A. Smith, became the owner, about 1878, of a piece of land at the corner of Hoyt and Main streets, having a frontage of 180 feet, more or less, on the northwesterly side of Main street ; the side of the street upon which, by the ordinance of April 12, 1871, above referred to, a side- or foot-walk was directed to be laid.

4. There was, it seems, at this time, a plank walk in front of her lot, laid substantially in conformity to the requirements of the ordinance. Whether it had been laid there by the former owners in obedience to the ordinance does not appear from the testimony, though it may be fairly inferred that it had been.

5. On September 8, 1884, the borough council directed its secretary, C. W. Boone, to notify Mrs. Mary H. Smith, among others, to repair the side-walk in front of her property referred to, within twenty days from the date of the notice, or, upon her failure to do so, that the borough would do it and add to the cost thereof a penalty of twenty per centum. The Smiths lived, at that time, at New Milford, Susquehanna county. Mr. Boone notified Mr. Carle, who resided in Kingston and acted as an agent for Mrs. Smith, of this action of the borough council, and the latter replied that if Mr. Boone were to send

a written notice by mail to Mrs. Smith, she would probably direct him to proceed to make the necessary repairs. On the following day Mr. Boone mailed, as requested, a notice to Mrs. Mary Smith, New Milford, Susquehanna county, Penn'a, using an envelope upon which was printed a request that the letter if not delivered within ten days should be returned to him. The letter was not returned to Mr. Boone, nor did he, receive any reply from Mrs. Smith.

6. From all the evidence it appears that the side-walk in front of Mrs. Smith's property was, at this time, in a dilapidated and unsafe condition.

7. It seems that, at some time in the year 1884, Mr. Carle, Mrs. Smith's agent to some extent, repaired the walk. He admits that this was done by him after complaints by some one, though he fails to recall the conversation referred to by Mr. Boone. He states that he put down some new planks ; possibly seven or eight pieces. He states further that Mrs. Smith told him just " to fix it up a little until next season, and then she would put a stone flagging there."

8. In May, 1885, Philip Edgar, then the burgess of the borough, wrote Mrs. Smith in his official capacity, directing his letter, as Mr. Boone had done, to New Milford, Susquehanna county, Penn'a, her place of residence, that if he did not hear from her in twenty days he would lay the walk. Receiving no reply to his communication, and being authorized, as he states, by the street commissioner, he proceeded in June, 1885, to tear up the old and lay a new walk of planks, in width, etc., in conformity with the ordinance hereinbefore referred to. The cost of this new walk is shown to have been, for materials and labor, $40.14, as small an amount as it was possible to have the work done for.

9. For this amount with interest and a penalty of twenty per centum additional, a municipal lien was filed by the borough, on July 8, 1885, and a scire facias issued thereon to No. 308 October Term 1885.

10. Mrs. Smith denies that she ever received the notices of either Boone or Edgar referred to. However that may be, the repairs made by Mr. Carle in the year of 1884 were undoubtedly the result of either Mr. Boone's notice to him or Mrs. Smith.

11. The principal issue of fact raised by the defence before the referee is, that the re-laying of the side-walk is unnecessary; that the existing walk was not in an unsafe condition, but that with slight repairs it would have been in a condition in substantial conformity with the ordinance. This question of fact has already been discussed by the referee in his findings, and it is his conclusion that the walk was decayed and beyond repair, and that the only thing to do under the existing condition of things was to lay an entirely new walk.

### FINDINGS OF LAW.

The questions of law suggested by the defence, either in the testimony or the argument of counsel, may be reduced to two in number, to wit:

1. That no sufficient notice was given the defendant to repair or re-lay her side-walk, and, not having been notified to do so, she cannot be made liable for the expense incurred by the borough in that matter, nor for the twenty per centum penalty.

This proposition is nowhere stated in terms by the defendant's counsel as part of her defence, but the referee infers that it is relied upon as such.

Neither the act under which the ordinance was passed, nor the ordinance itself, gives any direction as to the manner in which notice is to be given to the lot owners to comply with its provisions. The failure of the lot owners to obey the directions of the ordinance, within three months after its date, was to make them liable to have the work done at their expense by the borough, with the added penalty of twenty per centum. This ordinance was duly passed according to law and advertised. There is nothing in the act or ordinance which indicates that notice is a prerequisite, vesting jurisdiction in the borough authorities, or a proviso limiting their authority thereby given. And the opportunity being given the defendant in this proceeding of offering every reasonable defence, it is doubtful if the absence of notice by the borough authorities would necessarily invalidate their acts in this matter. This conclusion of the referee is based upon the opinion of the court in Pittsburgh v. Coursin, 74 Pa. 400, and the cases therein cited.

### Referee's Report.

The complaints in reference to this walk having arisen nearly fourteen years after the date of this ordinance, the council directed that notice should be given the defendant to re-lay her walk. The referee's findings of fact describe what was done in this respect. . . . . .

The conclusion of the referee, therefore, as to this proposition is, that all reasonable efforts to give the defendant notice were made by the borough authorities, and the alleged want of it, as a ground of defence in the proceeding, unavailing.

. 2. The other legal proposition of the defendant's counsel is, that, in obedience to the ordinance of 1871, the defendant, or her predecessor in the title, had caused a walk to be laid in front of her property in all respects in conformity with the ordinance, and that the assessment of the cost of re-laying a sidewalk upon an abutting lot owner is void and unauthorized by law. This was the only line of defence suggested in the affidavit of defence, and the point principally brought out by and dwelt upon in the evidence and argument of counsel.

In support of his proposition the defendant's counsel cites Wilson v. Allegheny, 79 Pa. 272, and a number of other cases which establish and confirm the doctrine that a municipal lien is an adverse right, given by law against the will of the citizen, and unless plainly given cannot take from him his property or his money; and, in short, that liens of this kind rest on the law alone. The cases of Philadelphia v. Tryon, 35 Pa. 402, down to Wistar v. Philadelphia, 80 Pa. 505, and 111 Pa. 610, which decide generally that local assessments must be for local, not general, benefit, and must be expressly granted by the legislature, and not inferred, are also referred to in behalf of the defendant. Relying upon these cases, and also upon the Appeal of the Protestant Orphan Asylum, 111 Pa. 135, the defendant's counsel argues that, as the law now stands, the re-laying of a foot-walk at the expense of an abutting lot owner is without warrant in law, and that anything done to a walk once built at the lot owner's expense, beyond a repair, must be done. [Sic.] It is insisted further that this rule, applicable by these cases to the paving of streets generally, is, in Hammett v. Philadelphia, 65 Pa. 146, applied to the re-laying of side-walks as well; and that where side-walks have been re-laid at the expense of the lot owner it has been, and can only be, done by virtue of enabling acts of the legislature.

It is undoubtedly true that municipal liens rest upon the law alone. It is equally true that the legislature may grant to municipalities the power of local taxation, for local benefits, upon properties benefited. The legislators alone are the judges of the expediency of such assessments, though none can be laid for purely public or general purposes. And, while this species of legislation is not limited in the constitution, such laws must provide for a just and equal assessment of the tax in accordance with the benefits, and must not impose unequal burdens. The benefit the object of the tax confers upon the owner of the property is the foundation of the power of special taxation, and it must be impartially and justly applied. It is a local taxation for a local benefit. These propositions are all stated and affirmed in: Philadelphia v. Tryon, 35 Pa. 402; Philadelphia v. Hoxie, 38 Pa. 339; Hammett v. Philadelphia, 65 Pa. 146; Wilson v. Allegheny, 79 Pa. 272; Reed v. Erie, 79 Pa. 346; Washington Ave., 69 Pa. 364; Saw Mill Run, 85 Pa. 169, and in the cases cited in the opinions of the court in these cases.

The act of April 3, 1851, as amended by the act of May 22, 1883, P. L. 39, provides that every borough in the commonwealth incorporated under that law shall have power "To regulate the roads, streets, . . . . . and foot-walks, . . . . . and the heights, grades, widths, slopes and forms thereof, and they shall have all· needful jurisdiction over the same; and they shall have power to survey, lay out, enact and ordain foot-walks . . . . . and to fix the size and width thereof, and to require the grading . . . . . thereof by the owner or owners of land respectively fronting thereon, in accordance with the general regulations prescribed." " To require and direct the grading, curbing, paving and guttering of the side- or foot-walks, by the owner or owners of the lots respectively fronting thereon, in accordance with the general regulations prescribed." The act further provides for the collection of the cost of such paving, etc., out of the owners of the land, in case of their failure to obey the orders of the borough authorities within the time prescribed by the general regulations, of a penalty of twenty per centum in addition thereto, and the filing of a lien therefor. The ordinance of 1871 referred to, was founded upon this act. It constituted the general regulations prescribed.

Referee's Report.

Can the borough, by virtue of this act and the ordinance, require a lot owner to, re-lay a worn-out pavement, originally laid in obedience to its provisions?

It is denied by the defence that the power to re-pave at the lot owner's expense is conferred by the act of 1851 and its supplements; that the property has once paid for the benefit conferred, the basis or foundation of the right to assess in that manner; and that in the absence of a statutory power to impose the cost of a re-paving on the lot owner, it must be done at the expense of the entire municipality. Neither the referee nor the counsel in the case have been able to find any cases directly in point. The questions presented to the court have been generally as to the power to impose the cost of laying or re-laying the curbing, culverts and sewers, or cart-ways of streets.

In support of his proposition, the counsel for the defence calls our attention to the case of the Pittsburgh Orphan Asylum's Appeal, 111 Pa. 135. That case decided that an act of the legislature which enabled the city of Pittsburgh to impose upon the inhabitants of certain districts within it the cost of re-paving certain streets, which had been found by viewers to be in whole, or in part, for a local benefit, was unconstitutional. The basis of this decision was that local assessments were about to be made for what were necessarily public improvements. To estimate how foreign its principles are from the case before us, it will only be necessary to quote from the decision of the court. GORDON, J., says (p. 144): "We admit that the legislature has the right to confer upon municipalities the power to assess the cost of local improvements upon the properties benefited thereby. We can readily understand why the cost of constructing and maintaining a sewer, which is designed for the drainage of a particular street or locality, and which is essentially necessary for the health, comfort and convenience of the inhabitants dwelling along such street, or in such locality, should be assessed upon the property of the district thus benefited, for the improvement as well as the use is local, and the benefit to the public is but secondary. So with a side-walk without which a house in a town or city cannot be said to be finished; and though the public has the right of way over it, the greater benefit results to the property itself." The opinion of the court proceeds further to point out the dis-

tinction between the cart-way, as purely a public and general improvement, and such improvements as must be regarded as local. In the opinion of the court in this case it is apparent that a side-walk is regarded as a local improvement; such an improvement as is properly maintainable at the expense of the abutting lot owner.

Wistar v. Philadelphia, 80 Pa. 505, and 111 Pa. 610, are also cited by the defendant's counsel. Neither of these, however, it seems to the referee, can rule this case. On the contrary, upon a careful analysis, they seem to negative instead of aid the defendant's argument. Wistar, the plaintiff, was the owner of lands on Broad street, in the city of Philadelphia. He had been, under the city ordinances, required to place a curb between the side-walk and the cart-way opposite his property. Some years after, the cart-way was narrowed, and an effort was made to force him (Wistar) to set a new curb. The right of the city to have this done at Wistar's expense was denied by the court; but simply on the ground that he had recently placed a curb in position, which was still in good condition. It seems to be taken for granted that if the side-walk or curb were out of repair or worn out, there would have been no question about his liability to the expense of a new one. Indeed the court (Justice AGNEW), goes so far as to say: "It may be conceded also that a general power to pave implies a power to repair and re-pave when the condition of the cart-way or foot-way requires it; and of this, prima facie, the city officers may judge." This case was simply one of whether the city authorities, whenever possessed with the desire or whim to do so, could alter the grade or alignment of a curb or foot way. It will be noticed also that the act under which the city proposed to force Wistar to pay for this improvement, does not differ materially from the act of 1851. Neither allude to a re-pavement; and yet under this act the court conceded that a land owner could be forced to re-pave. The case of Wistar v. Philadelphia, 111 Pa. 604, is in all respects similar to the last referred to. Here again it is intimated that if this were a side-walk, or something incident to a side-walk, out of repair or worn out, the lot owner could be made to repair or restore it.

The subject is discussed at some length in 2 Dillon on Municipal Corporations, 2d ed., 721, and notes, and the conclusion

reached by the author, after an examination of the cases which are referred to, is, that the power to tax and the power to make local improvements at the expense of the property benefited, is, like all other legislative power of the municipality, a continuing one, unless there be something to indicate the contrary; and hence it is not exhausted by being once exercised. " Therefore the power to compel" (quoting from Dillon) " parties to pave, ordinarily extends to compelling them to re-pave when required by the municipal authorities." The author referred to then discusses Hammett v. Philadelphia, 65 Pa. 148, which might seem to conflict with this doctrine. The referee does not regard this last case as in conflict with his conclusion in this, for the reason that the special taxation authorized by the act before the court in that case was avowedly for a general and not a local object.

The referee concludes, therefore, as a matter of law:

That, under the act of 1851, and its supplements, and their ordinance, the borough of Kingston, having made all reasonable efforts to give notice to the defendant, and under the facts as found by the referee, was warranted in having her sidewalk re-laid at her expense, and in filing a lien therefor as provided in the act.

The counsel made no special requests for findings either of law or fact, but the referee has endeavored to make his findings sufficiently full.

The referee therefore finds that judgment should be entered in favor of the plaintiff and against the defendant, in the sum of forty dollars and fourteen cents, with a penalty of twenty per centum in addition, with interest from June 24, 1885, and costs.

Exceptions filed to this report were overruled by the court, WOODWARD, J., saying :

Notwithstanding the able argument for the defendants, we are of the opinion that the view of the law taken by Judge DILLON, and adopted by the referee, that " the power to compel parties to pave, ordinarily extends to compelling them to re-pave, when required by the municipal authorities," is correct. The exceptions to the report are overruled, the report is confirmed, and judgment directed accordingly.

Judgment being entered, the defendants took this writ, assigning for error the overruling of the third exception to the referee's report, which was as follows :

3. The learned referee erred in his first conclusion of law, to wit: That, under the act of 1851 and its supplements and their ordinance, the borough of Kingston, having made all reasonable efforts to give notice to the defendant, and, under the facts as found by the referee, was warranted in having her sidewalk re-laid, at her expense, and in filing a lien therefor as provided in the act.

*Mr. Edward E. Hoyt*, for the plaintiffs in error :

1. The general borough law of 1851, under which Kingston borough was organized, does not authorize the filing of a lien for re-paving. No power to re-pave is expressly given ; none can be implied: Philadelphia v. Hoxie, 38 Pa. 339. "A municipal lien is an adverse proceeding, given by law against the will of the citizen, and, unless plainly given, cannot take from him his property or his money : the defendant might be liable to the city in an action of assumpsit, and yet the city might not have the right to enforce the collection of her claim by municipal lien : " AGNEW, C. J., in Wilson v. Allegheny City, 79 Pa. 272. Other cases : Reed v. Erie, 79 Pa. 346 ; Philadelphia v. Tryon, 35 Pa. 402 ; Hammett v. Philadelphia, 65 Pa. 146 ; Washington Avenue, 69 Pa. 352 ; Saw Mill Run, 85 Pa. 168.

2. The conclusion of 2 Dillon, Mun. Corp., 2d ed., 721, we conceive to be plainly irreconcilable with the above decisions, and to be due to a failure to distinguish between those powers which are implied because necessarily incident to a duty, and those powers which rest upon no duty whatever. The municipal authorities are charged with the care of the streets ; it is their duty to keep the streets in good condition. Hence the power to pave or otherwise care for streets, at the general expense, necessarily implies the power to re-pave, etc., at the general expense. This, we believe, is as far as Judge DILLON's rule above mentioned can go, and is a very different thing from the proposition that the power to pave at local expense implies the power to re-pave at local expense. Judge DILLON applies his conclusions to cart-ways as well as foot-walks, while this

Opinion of the Court.

court, in numerous decisions, has recently not only denied the implied power to re-pave cart-ways at local expense, but has held unconstitutional all acts attempting to convey in express words such power. See Hammett v. Philadelphia, 65 Pa. 146; Appeal of Orphan Asylum, 111 Pa. 135.

3. Even if the power to assess locally the cost of paving did imply the power to assess the cost of re-paving, the defendant, or her predecessors having made a side-walk conforming to all the requirements of the ordinance, the ordinance was functus officio. By what authority, then, was this lien filed for a walk laid more than fourteen years after the ordinance had been complied with? The paving must be authorized by and must strictly follow the terms of the ordinance: Philadelphia v. Edwards, 78 Pa. 62.

*Mr. Alfred Darte*, for the defendant in error:

1. A distinction appears to be made between repairing a worn-out curb or pavement and replacing one in good repair with a better kind. A side-walk is spoken of as a local improvement, the cost of repairing or re-laying which, when worn out, can be collected from the abutting properties: Wistar v. Philadelphia, 80 Pa. 505; s. c. 111 Pa. 604; Orphan Asylum's App., 111 Pa. 144. A party receiving injury from a defective side-walk in front of defendant's property could recover damages directly from him: Grier v. Sampson, 27 Pa. 183; Homan v. Stanley, 66 Pa. 464. Such could not be the law, if, when the walk was once laid by the owner, that ended his responsibility for its condition.

2. A side-walk is so far a local improvement that, where a general contract is made for erecting a building and laying sidewalk, the statutory period for filing a mechanics' lien for material actually used in constructing the building only runs from the date of the last work on the walk: Yearsley v. Flanigen, 22 Pa. 489; Hershey v. Gohn, 1 Penny. 40.

PER CURIAM:

The report of the learned referee so thoroughly and well disposes of the facts and law of this case, that nothing is left for us to do but adopt his opinion and affirm the judgment.

The judgment is affirmed.