BOROUGH OF BELTZHOOVER v. T. S. MAPLE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 28, 1889—Decided November 11, 1889.

1. Under § 2, act of April 3, 1851, P. L. 320, upon the failure of an abutting lot-owner to construct a board walk after notice so to do, the borough may construct it and file a lien for the cost thereof, with 20 per cent additional as a penalty: Smith v. Kingston Bor., 120 Pa. 357.
2. The fact that a separate lien is filed against each lot of a block of contiguous lots, will not affect the validity of the liens, and the court may order that a final judgment in a suit on one lien shall be a test of the validity of all of them.
3. When liens are filed against lots in a borough block which are unimproved by the erection of buildings upon them, their validity is not affected by the fact that the foot-front rule was adopted as a means of ascertaining the cost of the improvement chargeable to each lot.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 9 October Term 1889, Sup. Ct.; court below, No. 417 January Term 1887, C. P. No. 2.

On December 30, 1887, a summons was served in a scire facias sur municipal claim filed by the borough of Beltzhoover against Thomas S. Maple.

This claim had been filed for a lien against a corner lot owned by the defendant, to secure the cost of constructing a board walk on Fourth street in said borough. The defendant owned an entire block, of which the corner lot mentioned was a part, and like claims were filed against each of the other lots plotted in the block.    The block had not been improved by the erection

of buildings upon any of the lots.    Writs of scire facias had
been issued upon all these claims.

On January 8, 1887, the defendant, on petition filed, obtained
a rule upon the plaintiff to show cause why the several suits
should not be consolidated into one, and why the costs of the
unnecessary suits should not be paid by the plaintiff.    On the
hearing of this rule, it was ordered that if the defendant would
file a stipulation in writing, that he would let the other cases
abide the decision in one case, proceedings in all the cases after
No. 417 should be stayed until final decision in No. 417.    Stip-
ulation filed.

The facts shown at the trial on May 29, 1888, sufficiently ap-
pear in the charge to the jury, Ewing, P. J.:

In this case the borough of Beltzhoover has filed a lien against
a lot of Mr. Maple, being lot No. 655 in McLain & Maple's plan
of lots in the borough of Beltzhoover, which is on record.    The
lot is at the corner of Fourth street, a street 50 feet wide, and
Haberman avenue, also 50 feet wide.    The recorded plan shows
the property laid out in lots 25 feet wide.    The depth is not
given, but is probably 125 feet.

[We are asked to say to you that, because this is suburban
property, it is not assessable by the foot-front for such an im-
provement as this, a board walk in front of the property.    We
decline to so instruct you.    We do not think that, under the
evidence, it is rural property in that sense, but that, from its
division and use, it is subject to assessment per foot-front for
such improvement.][15]    [We are asked to say, also, that the
sidewalk being on one side of the street, the cost of it must be
divided between that and the other side of the street.    We
cannot so say.    We think another sidewalk may be ordered
on the other side of the street, and the cost of it assessed upon
the property-holders there.] [16]

There are numerous defences set up, and a large number of
points have been submitted by counsel on each side.    The ev-
idence shows that an ordinance was passed by the borough
council on June 5, 1886, for the construction of a board walk
on the south side of Fourth street, from Beltzhoover avenue to
Florence street, and on the north side from Florence street to
Myrtle avenue; and that the board walk was so constructed.

An earlier ordinance, adopted March 4, 1878, regulates the construction of board walks and provides for notice to the parties. That general ordinance in relation to board walks, and earlier ordinances also, fixes the curb lines of the streets, so that when the authorities come to fully improve them, in the regular way, by pavements, etc., they shall know how to do it. It makes the sidewalk of a 50 foot street 10 feet wide when fully completed. In other words, the curb line is fixed 10 feet out from the property line, which is about the proportion adopted in the city of Pittsburgh. About one fifth of the width of each street is allowed for a sidewalk. This general regulation in regard to board walks provides for a board walk of not more than 4 feet in width in front of unimproved property. That, I think, is the general width of a board walk, unless otherwise ordered, to be in the middle of this 10 feet of sidewalk, that is, 3 feet from the curb and 3 feet from the property line.

In this case, it appears that the board walk was so laid, but was carried out 7 feet beyond the property line at the corner lot, so that it would meet a similarly constructed board walk on the other street, as would evidently be necessary to make a complete sidewalk, if there was one on the other street.

It is alleged on behalf of the defendant, that there was no sufficient ordinance fixing the grade or the manner in which these board walks are to be built. There is evidence in the ordinance, however, fixing the general place for the board walk in the sidewalk, and there was no necessity for a new ordinance for that. In passing an ordinance for a board walk along a particular street, it is not necessary to say where in the sidewalk it shall be. The location of the board walk, if it did not take the whole of the sidewalk, was fixed by the general ordinance. There is also evidence from which the jury might find the grade of Fourth street, or they might not, namely, a profile proved by counsel which would fix the grade; although I am inclined to think the jury might fairly find that there was no formal grade fixed for the board walk on this street. When a board walk is ordered to be built, without any special grade being fixed, it means the natural grade of the surface. That makes the grade unless otherwise ordered. I do not think it is important, however, on account of other evidence in the case about this matter. That evidence I will refer to.

Charge of Court below.

It is alleged that there was no sufficient notice given to Mr. Maple of this ordinance for making the board walk. We think there was. It was done in two ways : first, it was posted on the premises, and second, given to him personally at his request. He seems to have recognized that and treated it as sufficient. He says he went to the street committee, which was the proper committee, to ascertain at what grade they wanted it put down, but they failed and neglected to give it to him. The act of assembly and the ordinance provide, that after it is determined to build a board walk and notice is given to the lot owner, he has the right to construct it himself ; but if he does not, then the borough may construct it at his expense, and collect the cost thereof with twenty per cent additional. Now, the ordinance fixes that thirty days' notice is to be given, and the work must be done within thirty days, or within a month. He had that notice on the seventh of August; the work was not done, and it seems a contract was let by the borough authorities to Mr. Walters and others, or parties with Mr. Walters, to build this board walk at thirty cents a foot. Mr. Maple, in his testimony, says that he was waiting for them to inform him of the precise place in which they wanted the board walk built, and was ready to build it. He does not complain of any want of notice. He says he then saw these parties grading there and saw how it was to be done. He claims that he went to those that were doing the work, inquired, and found that they had a contract with the borough to do it at thirty cents a foot, and that that was more than it would have cost him to do it himself, he having some special facilities for such work; and that he, seeing the street commissioner, who was superintending the work of locating the board walk, told the contractors, in his presence, that as they had the materials there they could go on and do it; that it was a little more than it would have cost him, but, substantially, that he would pay them for it ; in other words, that he made a contract with them to do the work for him and not for the borough.

Now, we say to you that if he went to the street committee and demanded directions as to where he should put the board walk down, whether to cut down the grade or build it substantially on the surface by leveling it off, as according to his testimony was actually done there, if he did that and they neglected

to give him the information and were holding him back with any promise to give it to him, then the thirty days would not run against him, and he still had the right to put down the board walk himself at his own expense, and could make a contract with Mr. Walters or anybody else to do it. If he contracted with Mr. Walters, independent of the borough contract, and it was built under that contract, then he owed Mr. Walters for the work, not the borough, and it cannot recover.

According to Mr. Maple's testimony, which is the most satisfactory we have on that, the street is cut on the hillside and is not graded out nearly to the full width of 50 feet, the board walk being above the grade of the traveled roadway, and at the side, which is simply leveled off so that the walk may be laid on it properly. [Now, if he went there and found that the borough had let the contract, that the grade was simply the leveled surface, and knew that the contractor, Walters, had the contract to lay the board walk for the borough at thirty cents a foot, and he simply said, " go ahead," without contracting for himself that they should do it for him at that place, then he is estopped from raising these other questions and is liable to pay. The two men, Walters and Cox, who were present, say that he said nothing about doing it for him; that he knew that the contract was with the borough, but simply said to go ahead with their arrangement. Now, upon the determination of that disputed fact depends, I think, the question whether there should be a verdict for the plaintiff or the defendant in this case.] [17] I do not think that any of these people are intentionally wrong, and it is very unfortunate, in my judgment, that this misunderstanding arose, or that there should be any bad feeling in the matter.

As to the question that has been argued before you about the liens having been filed against one lot instead of all, or instead of against the block as a whole, that is a matter that you have nothing to do with. We have had it before us, and while we are inclined to think that they might have maintained a lien against the whole block, we are not entirely certain of it, and think they were not bound to run that risk.

There is one fact, not disputed, which we wish you to find specially, and include in your verdict. We are asked to say if you find for the plaintiff, that you should only find for the 25

Charge of Court below.

feet, the actual front of the lot, and not for the 7 feet beyond that. Our present impression is that the owner of the lot has to pay for building out on both sides to the full width, and that that is the rule here, but it is by no means certain under the peculiar wording of the ordinance. We will ask you to find that fact, that it includes 7 feet out from the property line, and find a verdict for the full amount. If you find for the plaintiff, and we conclude that only 25 feet can be charged for, we will enter a verdict for $\frac{25}{32}$ of your verdict.

If you find for the defendant, you say so, and nothing more.

The defendant requests the court to charge:

9. That the per foot-front rule cannot legally be enforced in the assessment attempted to be collected in this suit, as the property in question is unimproved, unoccupied and rural in its character.

Answer: Refused.[10]

10. That no such notices have been produced in this proceeding as would give jurisdiction to enforce the lien in this suit against the property wherein the same is claimed.

Answer: Refused.[11]

11. That if collectible at all, one lien should have been filed against the whole block of lots, from 655 to 674 inclusive, instead of twenty separate liens.

Answer: Refused.[12]

The jury returned the following special verdict:

"We find for the plaintiff in the sum of $12.38, subject to the opinion of the court on the question of law reserved, to wit: we find that the lot on which the lien is filed is a corner lot, fronting 25 feet on Fourth street and extending back along Haberman avenue, a street 50 feet in width; and that under the borough ordinances the curb of sidewalk on said avenue is 10 feet from side of street; that the ordinance requires the board walk to be 3 feet from side of street and sidewalk 4 feet in width, making 7 feet; that the sidewalk on Fourth street was built out 7 feet on Haberman avenue beyond the lot line, making 32 feet of board walk in front of said lot actually built, which 32 feet is charged for in the lien. If the court be of the opinion that the entire 32 feet is properly charged on said lot, then judgment to be entered on the verdict without modifica-

tion. If the court be of the opinion that the lien should only have been filed for the 25 feet front, then judgment to be entered for $\frac{25}{32}$ of the amount of the verdict."

On September 16, 1888, the court overruled a motion for a new trial, filing the following opinion:

The lien is against a corner lot, and it seems to us clear that the defendant, had he built the board walk himself in accordance with the act of assembly and the ordinance providing for and regulating board walks, would have been compelled to build it out beyond the lot line, so as. to intersect the board walk on the cross street, thus adding 7 feet. Sidewalks being necessary to the use of the lot, are not governed by the rules applicable to the roadway of the street. But the ordinance providing for the assessment of the cost of board walks in the borough, where the owners do not construct them, only provides for the assessment per foot-front of the lot. This is a part of the authority for the assessment, and it limits the assessment in this case to that amount. It follows, that judgment must be entered for the lesser amount found by the jury, to wit: $\frac{25}{32}$ of $12.38, equal to $9.67.

Judgment having been entered as directed, the defendant took this appeal, assigning for error, inter alia:

10–12. The answers to defendant's points.[10 to 12]

15–17. The parts of the charge embraced in [ ] [15 to 17]

*Mr. Winfield S. Wilson* and *Mr. T. H. Baird Patterson,* for the appellant.

Counsel cited: Seely v. Pittsburgh, 82 Pa. 364; Washington Ave., 69 Pa. 358; Saw-Mill Run Bridge, 85 Pa. 169; Kaiser v. Weise, 85 Pa. 368; Craig v. Philadelphia, 89 Pa. 269; Philadelphia v. Rule, 93 Pa. 18; Scranton v. Penna. Coal Co., 105 Pa. 450; § 27, article I., act of April 3, 1851, P. L. 320; Harper's App., 109 Pa. 15; Neeld's Road, 1 Pa. 353; Boyer's Road, 37 Pa. 257; Hersberger v. Pittsburgh, 115 Pa. 87; Wilson v. Allegheny, 79 Pa. 272; Breed v. Allegheny, 85 Pa. 214; Watson v. Sewickley Bor., 91 Pa. 333; Reilly v. Philadelphia, 60 Pa. 467; Pittsburgh v. Cluley, 66 Pa. 452.

*Mr. T. H. Davis,* for the appellee.

Counsel cited : Norton v. South Easton Bor., 1 Cent. R. 217 ; Harvey v. South Chester Bor., 99 Pa. 568; Connellsville Bor. v. Gilmore, 15 W. N. 343 ; Smith v. Kingston Bor., 120 Pa. 357 ; Bidwell v. Pittsburgh, 85 Pa. 412.

PER CURIAM:

Smith v. Kingston Bor., 120 Pa. 357, squarely decides, under the general borough act of April 3, 1851, P. L. 320, that upon the failure of a property owner to repair his sidewalk, after notice to do so, the borough may repair it and file a lien against the owner for the cost thereof, with 20 per centum additional as a penalty. This is precisely what was done in this case ; and, although a large number of errors were assigned to the proceedings below, we fail to see merit in any of them. The discussion of the foot-front rule is out of place, as that was adopted merely as a means of ascertaining the cost of the improvement to each lot. Nor is it any objection that separate liens were filed against each lot of the block. The defendant has cut his property up, and plotted it as town lots. The court below might have consolidated the suits to save costs, but the same object was accomplished by the arrangement that one suit should be the test of all.

                                        Judgment affirmed.