## JOSEPH LANGDON v. CHARTIERS TP. ET AL.

### APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 30, 1889—Decided January 6, 1890.
[To be reported.]

(*a*) The act of April 2, 1869, P. L, 625, authorizes tax-payers in certain townships of Allegheny county to construct footwalks upon public roads therein, and requires the supervisors to deduct the reasonable cost of such walks from the road taxes of the persons so constructing them.

1. Said act does not impose upon the townships any duty to make or repair footwalks: Chartiers Tp. v. Langdon, 114 Pa. 541; but the duty of repairing footwalks so constructed rests upon the tax-payers who built them; wherefore the township is not liable to a person using such walk for an injury resulting from its defective construction or maintenance.

(*b*) A supervisor of a township governed by said act, in consequence of a request by tax-payers that he build such a walk, and a threat that otherwise they would do it themselves and apply thereto their taxes, which were more than sufficient to pay for it, constructed the walk with township funds, and received credit therefor in his official account.

2. In building such footwalk, under the impulse of the request and threat of the tax-payers, the supervisor was merely acting as their agent, and neither in his official capacity as supervisor, nor as an individual, did he thereby become subject to the duty of keeping it in repair.

3. Neither by any general statute, nor by said act of 1869, is a supervisor required or empowered to construct footwalks upon the roads or repair footwalks thereon, and as his acts cannot bind the township unless within the scope of his authority to bind it, his building such walk as supervisor cannot impose upon the township any duty to make it safe for persons walking thereon.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 99 October Term 1889, Sup. Ct.; court below, No. 139 March Term 1888, C. P. No. 1.

On December 27, 1887, Joseph Langdon brought trespass against the township of Chartiers, in Allegheny county, and Abraham Clinton, to recover damages for personal injuries sustained by the plaintiff, as it was alleged, in consequence of

negligence on the part of the defendants. The defendants' plea was not guilty.

In a former action, brought against the township alone, the plaintiff recovered a judgment for $349, as damages for the injuries in question in the present case, but the judgment was reversed by the Supreme Court without the award of a new venire: Chartiers Tp. v. Langdon, 114 Pa. 541. Thereupon the present action was commenced.

At the trial, on March 19, 1889, evidence was presented substantially to the same effect as that adduced upon the trial of the former case, to wit: that by a special act of assembly approved April 2, 1869, P. L. 625, the tax-payers of Chartiers and certain other townships in said county, were authorized to construct footwalks on the public roads in said townships, the cost of which the township supervisors were required to deduct from the road taxes of the persons constructing them; that about November 1, 1883, the plaintiff and two others were walking upon a board walk, built along the side of one of the public roads in Chartiers township, when one of the other persons stepped upon the end of a plank in front of the plaintiff, and the plank being loose, that end of it sank and the other end ascended and tripped the plaintiff, causing him to fall and receive the injuries complained of. Testimony for the plaintiff tended to show that Abraham Clinton then one of the township supervisors, had notice, prior to the occurrence of the accident, that the walk was in a dangerous condition and neglected to properly repair it, while testimony for the defendants tended to rebut the charge of negligence upon the part of the supervisor.

In addition to the same facts that had been in evidence in the former case, the plaintiff presented testimony tending to establish that the board walk was built in 1881 under the supervision and direction of Abraham Clinton; that during that year Clinton was one of the two supervisors of the township; that he paid the cost of constructing the walk out of the road taxes in his hands, and his expenditures therefor entered into the account settled by him as supervisor with the township auditors, and were therein allowed; that he afterward, as supervisor, made some repairs upon the walk; that it was defective as originally built, and its plan of construction was faulty. Testimony for the defendants tended to show that the board walk

was constructed by Clinton at the instance of the plaintiff and other tax-payers of the township, who asked him to build it, saying that if he did not do so, they would build it themselves and deduct the cost from their taxes; and one tax-payer, whose taxes for the year amounted to more than the entire cost of the walk, declined to pay until it should be constructed, saying that he had promised the citizens in the neighborhood to give his taxes for that purpose.

At the close of the testimony the court, STOWE, P. J., charged the jury in part as follows :

The first question that presents itself here—because nobody doubts but that the extent of the duty of the overseers of the township extends to the cart-ways and roadways, or the wagon portion of the road, is, does the act [the general road law] apply to what we call footwalks, or means by which people can walk along the streets, as well as drive their wagons and horses ? While the question has never been decided, so far as I know in Pennsylvania, I am free to say that my own opinion is, and I instruct the jury so in this case that it may be brought before the Supreme Court, that the supervisors are bound to have reasonable footpaths, whether they are stone or brick, or boards or cinders, or what not ; that they at least have the right to put reasonable footwalks and paths along the side of the roads for people to walk upon; that having done this, they are bound to keep them in reasonably safe condition and repair; so that they will not be traps for people. . . . . I do not pretend to say that they are bound to build sidewalks, but once they do build them, take that responsibility upon themselves, they are bound then to see that parties who ordinarily and properly use that means of getting along the street, instead of taking the road itself, as they have to do in most of the country roads, are reasonably protected. That being the state of the law, that these parties had the right to build sidewalks, we come to this act of assembly [the act of April 2, 1869, P. L. 625].

That act did not limit the right of the supervisor to make sidewalks, but took it out of his power to say that there should not be any, and put it into the power of you and me and anybody who happens to live in those townships, to build our own sidewalks and then go to the supervisor and compel him to

deduct the cost from our taxes. It is a very singular sort of legislation, but there it is.

Supervisors are compelled to pay, to allow parties who built these sidewalks to deduct the expense from their road taxes, but the act does not, as I understand it and to bring this case clearly before the Supreme Court, I instruct you as a matter of law, in any wise interfere with the right of the supervisors, exercising their own discretion, to make sidewalks where they see fit to make them, at the general public expense; not taking the money of A, B and C, under this act, but taking the money properly appropriated to road taxes, whether for cart-ways or not, and applying it to the payment of the particular board walks constructed by them.

Then we come to this case before us. [There is not a particle of evidence that this sidewalk was built under the provisions of this act of assembly.] [4] The evidence shows that these parties wanted this sidewalk; anybody familiar with the location could see the necessity for it. There is the Novelty Works on one side, and a steep road near the station at Idlewood, with this narrow passage way along the foot of the hill, between that and the run, and it is a very unsafe place to get along in most seasons of the year, mud up to the knees almost the entire length, as I understand it. The parties living there wanted to have the means to get to and from the station and out into the little town, I believe, that is built on the side of the hill, although there is no evidence of that. But at all events, whether so or not, these parties or some parties determined that they would have a sidewalk. They had the power under this act of assembly to say, either or any of them, we will put down this sidewalk ourselves, or we will hire somebody to do it, and we will make the supervisor allow us to that extent on our taxes, enough to pay for it. And they notified the supervisor of that. He did not direct them to go on and build it, or say anything about it, and let them do as they pleased; but Clinton, as I understand his testimony, thinking to save money for the township, undertook to build this and appropriate the general taxes to its payment, getting the taxes that might otherwise be appropriated for the payment of this sidewalk from those parties, for the general use of the township. He did not build the sidewalk for these particular individuals, but he built it as supervisor of the township.

Then, getting back to where we were, the township had a right to construct this sidewalk at the public expense, under the general powers that the supervisors had, and the duty that devolved upon them to keep the streets and highways in proper condition. . . . . Now in this case, to make a long story short, we instruct you that the defendants had the right to build this sidewalk. There is no evidence to indicate that the sidewalk was built under this act of assembly, but that it was built under the general powers of the supervisors to construct sidewalks in the township. Having built it in that way, it was the duty of the township, through the supervisor, to keep it in reasonable care and condition, so that persons might not be injured. Then the question is, was this kept in such care and condition, or was the fact that the board was allowed to get loose, under the circumstances, such an act of carelessness and negligence as ought to have been prevented, and would have been prevented by reasonable care on the part of the supervisor? If it was not, your verdict should be for the defendants. If it was, you ought to find a verdict for the plaintiff.

Counsel for Chartiers township request the court to charge the jury:

1. That, as the evidence shows a special law for building board walks in said township, one of the supervisors had no right to construct any board walks so that the township would be liable for their repair.

Answer: Refused.[1]

2. That if the jury believe that the tax-payers of the township asked one of the supervisors to build a board walk in a particular place, and said unless the supervisor did so they would build the board walk themselves, then the supervisor built the board walk as the agent of the tax-payers who requested him to build it.

Answer: Refused.[2]

3. That under all the evidence, their verdict should be for the defendant township.

Answer: Refused.[3]

Answering the second point, the evidence is clear that, while the sidewalk might have been built at the instance of these tax-payers, the evidence shows clearly that the supervisor undertook to build it and construct it by virtue of his authority

Arguments.

as supervisor, and that he did not build one portion for me and another portion for somebody else, as my agent, or as we would employ some one to supervise work for us.   There is nothing in the case to justify the jury in finding that this act was done otherwise than as supervisor; and in fact the very fact that the parties notified the supervisor if he did not go on and do it they would do it as individuals, indicates clearly and beyond peradventure that the act was not done as the agent of these particular parties, and, therefore, that point is refused.

The verdict of the jury was for the plaintiff for $500, and judgment was entered thereon, whereupon the defendants took this appeal, assigning for error :

1–3. The answers to defendants' points.[1 to 3]

4. The part of the charge embraced in [  ] [4]

*Mr. Thomas Herriott* (with him *Mr. H. R. Ewing, Mr. E. E. Cotton* and *Mr. W. A. Holman*), for the appellants :

1. This court has never decided that township supervisors have a right to build board walks out of the township funds. When there is a special law providing for the erection of board walks, such as that applicable to this township, the supervisors have no right to build any such walks and make the township liable for their repair and maintenance.   At least, one supervisor cannot by himself, and without any consultation with his colleagues, bind the township in this manner, in the circumstances of this case:   Somerset Tp. v. Parson, 105 Pa. 360.

2. While townships are liable for not keeping their roads in repair, this board walk is not a part of the road in respect of which this liability arises: Chartiers Tp. v. Langdon, 114 Pa. 541.   When the supervisor was asked to build the board walk by the plaintiff and others, whose taxes were more than sufficient for that purpose, they made him their agent to build it. He did this, not under any law authorizing him to do it as supervisor, but as the agent of the plaintiff himself; and under the former ruling of this court the plaintiff and the others who asked for the walk must keep it in repair.

*Mr. James Fitzsimmons* (with him *Mr. John S. Robb*), for the appellee :

Arguments.

1. There was not a scintilla of evidence that the board walk was built under the act of April 2, 1869, P. L. 625. That act must be followed strictly, and a walk constructed under it must be paid for out of the road taxes of the citizens who build it. In this case, the evidence is clear and positive that the supervisor constructed this board walk and paid for it out of the general road funds of the township, thus departing from the terms and conditions of the act. We submit that one supervisor had power to place and keep the township road in good condition for easy and convenient traveling, and that this included the construction of a board walk for the easy and convenient passage of those on foot. And there are cases where a county or township is bound, even though its agent exceed his power in a particular apparently within his authority: Cook v. Deerfield Tp., 64 Pa. 445; Commissioners v. Hall, 7 W. 290; Allegheny Co. v. Watt, 3 Pa. 462; McCalmont v. Allegheny Co., 29 Pa. 417.

2. We are now, however, beyond the question whether the supervisor exceeded his authority. The testimony shows that this work and the expenditures therefor were approved by the proper authorities when he settled his accounts in March, 1882, which approval removed any doubt as to his authority. And the question here is, not whether the township would have been liable for work and materials furnished for it, but whether there is a liability for injuries caused by this defective board walk nearly two years after its construction and approval by the township authorities. But, even if we assume that the township had no right to construct and keep the walk in repair, then it became the duty of the supervisor upon its condition becoming defective and upon his receiving reasonable notice of that fact, to either repair or remove it altogether: § 6, act of June 13, 1836, P. L. 556; Chartiers Tp. v. Langdon, 114 Pa. 541. His personal liability for neglect of duty does not lessen the liability of the township for injuries occasioned thereby: Rapho Tp. v. Moore, 68 Pa. 404; Dean v. Milford Tp., 5 W. & S. 545, Erie v. Schwingle, 22 Pa. 388.

3. If, however, the court should be of opinion that the township cannot in any event be held liable for the damages in this case, then we submit with all confidence that Abraham Clinton, who was supervisor of Chartiers township at the time of con-

struction of this board walk and who constructed it, must be held personally liable for the damages recovered. The proof is distinct and clear, that he constructed it while supervisor. That it was built carelessly and defectively, the proof is also clear and positive. If he exceeded his authority in its constuction, thereby relieving the township from liability, then he should either have repaired the defect, or have removed it from the roadway altogether. Under the general statute it was his duty so to remove it without delay : Chartiers Tp. v. Langdon, 114 Pa. 541. And if he acted without authority, or in excess of his authority, in constructing it, he was like a private agent, responsible for his act : Shearman & Redf. on Neg., § 170 ; Cooper v. Lampeter Tp., 8 W. 125.

OPINION, Mr. JUSTICE GREEN :

When this case was here before : Chartiers Tp. v. Langdon, 114 Pa. 541, we held that the township was not required either to make or repair footwalks, and was therefore not liable for accidents happening by reason of negligence in the construction or maintenance of such sidewalks. We see nothing in the present case to change our views on that subject. There is no general statutory duty requiring townships to make footwalks, and there is no particular statute on that subject applicable to Chartiers township, except the act of April 2, 1869, P. L. 625. But that act does not impose any duty, either of construction or maintenance, on the township, as we distinctly held in the case above referred to. It is not necessary to repeat the reasoning of that decision. It is entirely satisfactory to us, and controls the present case.

It is thought that the fact that the defendant Clinton, being a supervisor, built the footwalk in question, changes the case, and presents a different question from the one then decided. But we do not so consider it. The acts of Clinton, although he was a supervisor, cannot bind the township, unless within the scope of his authority to bind it. But the act of 1869 gave him no such authority, and he had none under any other law. As we said before: " The act does not empower the supervisors to make footwalks, or keep them in repair ; it authorizes, not requires tax-payers to make footwalks ; and, if they do make them, it is their duty to keep them in repair." The ev-

Opinion of the Court.

idence simply shows that Clinton, at the solicitation of the plaintiff and others, citizens and tax-payers of the township, built the footwalk in question, and paid for it out of the tax money of the township. But this tax money, so far as it came from the citizens who were urging him to build the footwalk, might be withheld from the township by the tax-payers, and appropriated to this very purpose, under the act of 1869 ; and this is precisely what they threatened to do, if Clinton did not build the footwalk. In these circumstances, and under the impulse of this threat, Clinton did build the footwalk, and he was supervisor at the time. But it is too plain for argument that in doing so he was merely acting as the agent of those tax-payers ; and neither they nor he could, by any action of theirs, impose upon the township a liability to which the township was not subject by law. We are clearly of opinion that the defendant's third point should have been affirmed, and a verdict directed in favor of the defendant.

There is no aspect of the testimony in which Clinton can be held liable individually for the accident to the plaintiff. He was not subject to any duty of repair as an individual. That duty rested upon the persons who directed him to build the footwalk. When he built it, he complied with their demand upon him ; but he did not thereby become subject to a duty of keeping the footwalk in repair, either in his official character as supervisor or as an individual. He had no custody of the footwalk, and had no more to do with its preservation than any other citizen.

Judgment reversed.