## Haverford School et al. v. Department of Highways of the Commonwealth.

*Road law — State highways — Sidewalks — Repair of sidewalks — Act of May 31, 1911.*

1. The remedy by mandamus is a strictly legal one, and the party invoking it must establish a specific right as well as want of a specific remedy.

2. Mandamus does not lie to compel a public officer to do any official act which the law does not impose upon him, or to discharge the duties of his office in a manner not authorized by law, or to do any official act which the law does not expressly or by implication require such officer to perform.

3. The statutory duty and authority of the Department of Highways of the Commonwealth of Pennsylvania to construct, improve and maintain the State highways is limited to the cartway and does not include the construction, maintenance or repair of sidewalks or sidepaths.

4. Under section 11 of the Sproul Highway Act of May 31, 1911, P. L. 468, the State Highway Commissioner, in addition to other powers conferred upon him, enjoys and possesses in the construction and maintenance of highways designated as State highways all the rights and powers conferred by existing laws on supervisors or commissioners in townships in the construction or maintenance of township roads.

5. Township supervisors or commissioners are not empowered or required to make footwalks or keep them in repair.

6. Sidewalks are a separate class under the law of Pennsylvania. Under the police power the owner can be required to lay a sidewalk, and if he fails to do so when requested, legislation has been provided that the township supervisors or commissioners may do it for him and make him pay for it.

7. There is no legislative mandate requiring the Department of Highways of the Commonwealth of Pennsylvania to construct, maintain or repair sidewalks and footwalks which have been destroyed or encroached upon in the proper widening of a turnpike road which has been converted into a State highway.

8. The title of a municipal corporation to the soil of its streets is paramount and exclusive, and no private occupancy, for whatever time, whether adverse or permissive, can vest a title inconsistent with it.

9. Supervisors have the sole care and entire supervision of the public highway, and no person, not even an abutting land owner, can make any permanent private use thereof without their consent or approval, and even then subject to the right of the township to discontinue the private use when it is deemed expedient or necessary, in order to promote the public use of the highway.

10. Where abutting owners have encroached upon the right of way of a turnpike road, subsequently converted into a State highway, so as to construct sidewalks, they have no legal ground for complaint if the public subsequently requires a greater width for the road or cartway than existed at the time the sidewalks were laid, and which widening thereof results in the destruction of a part of said sidewalks and reduces the width thereof.

Mandamus to compel the restoration and repair of sidewalks. C. P. Dauphin Co., Commonwealth Docket, 1926, No. 56.

*Hause, Evans & Baker, Pierce Archer, Jr.,* and *W. Logan MacCoy* (of *MacCoy, Evans, Hutchinson & Lewis*), for relators.

*George W. Woodruff,* Attorney-General, and *James O. Campbell,* 1st Deputy Attorney-General, for respondent.

WICKERSHAM, J., Nov. 23, 1926.—The relators seek by mandamus to compel the respondent to repair and restore all pavements, sidewalks and parts thereof which have been injured, broken or destroyed by the Department of Highways of the Commonwealth of Pennsylvania in paving Lancaster Avenue, in Lower Merion Township, Montgomery County; and also to compel the respondent to establish, construct and provide suitable concrete or other permanent pavement along the sides of the cartway in the front of those premises on the said Lancaster Avenue within the said Township of Lower Merion, where ordained or permanent sidewalks heretofore existed which were

destroyed by the Department of Highways in the course of widening the cartway to a width of forty feet.

The return of the respondent avers that there is no authority in, or duty imposed upon, the Department of Highways of the Commonwealth of Pennsylvania to lay, repair or maintain sidewalks for the use of pedestrians upon or alongside of State highways; that if there is such authority or duty, its exercise is within the discretion of the Secretary of Highways, and that, in so far as he has authority so to do, the Secretary of Highways will grant permission to either the Commissioners of Lower Merion Township or the owners of property abutting on said highway to construct and maintain sidewalks within the space lying between the present curb-line and the property-line along said highway, the construction and maintenance of which is to be subject to reasonable rules and regulations to be agreed upon.

This case was heard on petition, answer and depositions taken by the parties which it was agreed should become a part of the record.

### Findings of fact.

1. By virtue of an Act of the General Assembly of the Commonwealth of Pennsylvania, approved April 9, 1792 (see Statutes at Large of Pennsylvania, vol. 14, page 279), a company was incorporated under the name, style and title of the Philadelphia and Lancaster Turnpike Road Company, which was, by said act, authorized to make an artificial road from the City of Philadelphia to the Borough of Lancaster.

2. The said turnpike road constructed by said corporation extended from Philadelphia through Lower Merion Township—a township of the first class—in Montgomery County. It is known as Lancaster Avenue, and extends through a thickly-populated community, consisting of a succession of business and residential districts, with solid rows of stores and dwellings in some sections, and many schools.

3. The said Lancaster Avenue is a part of the Lincoln Highway, and is designated under the Sproul Act as State Highway Route No. 142, under the supervision and control of the Department of Highways. It is the main artery not only for through traffic between Philadelphia and the west, but also for local traffic along the main line of the Pennsylvania Railroad through said township, and is used by thousands of vehicles and pedestrians.

4. About the year 1880 the Lancaster Avenue Improvement Company purchased from the Philadelphia and Lancaster Turnpike Road Company all its right, title, interest and charter privileges. From the incorporation of the Philadelphia and Lancaster Turnpike Road Company in 1792 until July 16, 1917, the said corporation or its successors laid out and maintained a turnpike road from Philadelphia to Lancaster, tolls being charged for the use of the road.

5. The said Philadelphia and Lancaster Turnpike Road Company was empowered to, and did, lay out a right of way the width of fifty feet, and abutting property owners placed their fences along the fifty feet lines. The road was improved by said corporation to a width of thirty feet.

6. At divers times during the past twenty years sidewalks were laid on the south side of Lancaster Avenue within the right of way of the Philadelphia and Lancaster Turnpike Road Company to a width of about seven feet, either by the voluntary act of the property owners or by virtue of an ordinance of the Township Commissioners of Lower Merion Township requiring side or footwalks to be laid. There appear to have been some sidewalks laid on the north side of the said avenue, also within the right of way of said corporation.

"Beyond the Shank place up to the Church road there has never been a walk." "There is grass on that side, sloping from the property-line probably one foot in five to the curb; people can walk there with safety." There has never been a sidewalk on the north side of said avenue from Wynnewood Road east.

7. The highway in question, formerly a turnpike road, was declared to be a State highway by section 6 of the Act of May 31, 1911, P. L. 468 (commonly called the Sproul Act), to be known as Route No. 142, and was subsequently taken over from the turnpike company under the provisions of section 9 of that act, as amended by the Act of April 11, 1913, P. L. 59, Act of June 1, 1915, P. L. 691, and the Act of May 16, 1917, P. L. 184.

8. On May 16, 1924, the Department of Highways filed in the office of the Recorder of Deeds of Montgomery County its plans for widening the Lancaster Pike to a width of eighty feet.

9. During the year 1925 the Department of Highways of the Commonwealth of Pennsylvania undertook to widen and improve portions of said highway from a width of thirty feet to a width of forty feet. In the course of such widening of the highway the Department of Highways broke, tore up and completely destroyed the sidewalks ordained and constructed as aforesaid, including the sidewalks constructed for many miles in said township and paid for by petitioners or other citizens and taxpayers of the State of Pennsylvania, which said sidewalks extended over upon that portion of said highway which was being widened and permanently constructed.

10. In the course of the widening and construction of said highway some dirt, stone, broken concrete and other obstructions were placed along the side of the highway occupied as a sidewalk. These obstructions were placed thereon temporarily during the course of the work and have been removed therefrom.

11. There remains a strip of land on each side of said highway between the curb of the cartway and the respective property-line of from eighteen inches to five feet wide which is available for the use of pedestrians and is reasonably safe for such use.

12. There is no alternative route which can be used by pedestrians in place of this highway, inasmuch as it constitutes the only direct route connecting all settlements along the said main line of the Pennsylvania Railroad; and along the sides of said highway are located all the chief business districts from Paoli to Philadelphia.

### Discussion.

The question involved in this controversy is whether mandamus will lie to compel the Secretary of Highways to repair and restore all sidewalks, or parts thereof, which have been injured, broken or destroyed in widening the cartway of said Lancaster Avenue.

The remedy by mandamus is a strictly legal one, and the party invoking it must establish a specific right as well as want of a specific remedy: James *v.* Commissioners of Bucks County, 13 Pa. 72; Com. *v.* Rosseter and others, 2 Binney's Reps. 362; Douglas *v.* McLean, 25 Pa. Superior Ct. 9. When the legal right has not been ascertained or a remedy exists sufficient to enforce the right claimed, the writ of mandamus will not be granted. It is a high prerogative writ, to be used rather as a last resort than a common mode of redress. Hence, the court granting it will be careful to examine the circumstances and will exercise a sound discretion in doing so: Overseers of Porter *v.* Overseers of Jersey Shore, 82 Pa. 279, per Agnew, C. J. To enforce the performance of a duty by a public officer, that duty must clearly appear:

308        DISTRICT AND COUNTY REPORTS.        [8 D. & C.]

Haverford School et al. *v.* Department of Highways of the Commonwealth.

Dougherty *v.* Black, 262 Pa. 230, 233. Mandamus does not lie to compel a public officer to do any official act which the law does not impose upon him, or to discharge the duties of his office in a manner not authorized by law, or to do any official act which the law does not expressly or by implication require such officer to perform: Shisler *v.* Philadelphia, 239 Pa. 468; Davis *v.* E. M. Patterson, Treasurer, et al., 12 Pa. Superior Ct. 479; Com. ex rel. *v.* Fitler, 136 Pa. 129. It becomes our first duty, therefore, to determine whether a legal right on the part of the relators has been established.

We think the statutory duty and authority of the Department of Highways of the Commonwealth of Pennsylvania to construct, improve and maintain such highways is limited to the cartway and does not include the construction or repair of sidewalks or sidepaths. An examination of the Sproul Act of 1911, its amendments and supplements, shows that it nowhere specifically includes the sidewalk. Section 5 of said act provides that the State highways shall be taken over by the State Highway Department from the several counties or townships of the State, and when so taken over shall thereafter be *constructed, improved* and *maintained* by the State Highway Department at the expense of the Commonwealth. Section 6 of the act extends the authority contained in section 5 to toll roads which are State highways; and by section 11 the State Highway Commissioner, in addition to the powers conferred upon him, shall enjoy and possess, in the construction and maintenance of highways . . . designated as State highways, all the rights and powers conferred by existing laws on supervisors or commissioners in townships in the construction or maintenance of township roads; and by article XIX, section 1902, of the Administrative Code of June 7, 1923, P. L. 498, it is provided that the Department of Highways shall have the power and its duty shall be— *(a)* to mark, build, rebuild, relocate, fix the width of, construct, repair and maintain . . . State highways; *(b)* to have exclusive authority and jurisdiction over all State highways; . . . *(d)* to enter into contracts for constructing, repairing or maintaining State highways. A careful study of the above quoted acts of assembly discloses that there is no reference among the enumerated duties, powers or authority of the Department of Highways to *construct, maintain* or *repair sidewalks.*

We conclude, therefore, that the word highway, as used in these statutes, relates to the cartway, as distinguished from the sidewalk. At the time of the passage of the acts to which we have referred, the words "road," "street" and "highway," when thus used, had a well-defined meaning, and the legislature used the word "highway" in that restricted sense in all the statutes defining the duties and authority of the Department of Highways. Our conclusion is supported by the great weight of the adjudicated cases.

In Chartiers Township *v.* Langdon, 114 Pa. 541, it was held that under the Act of April 2, 1869, P. L. 629, which provides for the construction and maintenance of footwalks in Chartiers Township by the several taxpayers, the supervisor of roads deducting the cost of the same from the road tax of the persons constructing the footwalk, the township is not required either to make or repair the same, and as the liability of a township results from the omission of statutory duty, it is not liable for accidents that may happen in the construction or maintenance of said sidewalks. Mr. Justice Trunkey, in writing the opinion of the Supreme Court—see page 545—states: "The act does not empower the supervisors to make footwalks or keep them in repair." This case came before the Supreme Court again in 131 Pa. 77, in which, referring to the said Act of April 2, 1869, it was held: "Said act does not impose upon the townships any duty to make or repair footwalks."

Haverford School et al. *v.* Department of Highways of the Commonwealth.

Township supervisors are under no obligation to construct a footpath along a country road, and they cannot be charged with negligence in permitting other parties to construct a cinder sidepath four feet wide along a country road: Siegler *v.* Mellinger, 203 Pa. 256, cited with approval by Mr. Justice Kephart in Shaw *v.* Plains Township, 275 Pa. 293, which also holds that a township is not compelled to maintain or keep in repair a sidewalk constructed under an act of assembly unless the duty is imposed, and that township supervisors or commissioners are under no obligation to construct a footpath along every county road. See, also, Morrow *v.* North Sewickly Township, 86 Pa. Superior Ct. 55. A sidewalk is not included in the term "street" within the meaning of the statutes of Pennsylvania relating to paving and grading streets: Shady Avenue, 34 Pa. Superior Ct. 327.

Whilst it may be conceded that the term "street," in its broadest significance, includes the sidewalk as well as the cartway, it has long been the policy of the law to distinguish between them and to recognize that, as to the former, the rights and responsibilities of the owners of property are quite different from those enjoyed by or imposed on him in relation to the latter, or the street, as that word is used and understood in the common speech of the people: McMarlin *v.* Butler Borough, 41 Pa. Superior Ct. 20. Sidewalks, however, are a separate class under our law. Under the police power, the owner can be required to lay a sidewalk, and if he fails to do so when requested, legislation has been provided that the borough may do it for him and make him pay for it: Adamstown Borough *v.* Hartman, 75 Pa. Superior Ct. 591, per Trexler, J. In Appeal of the Protestant Orphan Asylum of Pittsburgh and Allegheny, 111 Pa. 135, 144, it was said by Mr. Justice Gordon, writing the opinion of the Supreme Court: "We can readily understand why the cost of constructing and maintaining a sewer, which is designed for the drainage of a particular street or locality, and which is essentially necessary for the health, comfort and convenience of the inhabitants dwelling along such street, or in such locality, should be assessed upon the property of the district thus benefited, for the improvement as well as the use is local, and the benefit to the public is but secondary. So with a *sidewalk*, without which a house in a town or city cannot be said to be finished; and though the public has the right of way over it, the greater benefit results to the property itself. But when we come to a street or other highway, which is primarily designed, not for the use or welfare of the inhabitants of any particular locality, but for the public at large, the case is very different."

In Smith and Wife *v.* Kingston Borough, 120 Pa. 357, Appeal of the Protestant Orphan Asylum of Pittsburgh and Allegheny was quoted with approval.

It clearly appears that our Supreme Court has refused to construe the General Road Act of 1836, which provides, "Public roads or highways . . . shall . . . be effectively opened and constantly kept in repair and . . . at all seasons be kept clear of all impediments to easy and convenient passing and traveling, at the expense of the . . . townships," to include authority to construct and duty to maintain footwalks or footpaths. There does not appear to be any valid distinction between the words we have quoted from the Act of 1836 and that used in the Sproul Act, requiring the Department of Highways to construct, maintain and repair State highways. This same distinction between the cartway and the sidewalk has been maintained by the Supreme Court in the cases from which we have quoted.

The test seems to be, with regard to townships, that they cannot be compelled to maintain or keep in repair a sidewalk constructed under an act of assembly unless the duty is imposed. The duty is statutory, and to hold them

liable it is necessary for us to find legislation compelling repair and maintenance, and this has been held in respect to counties in county road cases. The township authorities in a township of the first class may decide what highways shall have sidewalks, and when such sidewalks are built, the township will be liable for injuries occasioned through neglect to repair only so far as the statute requires repairs to be made: Shaw v. Plains Township, 275 Pa. 292,

Applying the law as heretofore quoted from the statutes and decisions of the courts, we are clearly of opinion that there is no legislative mandate requiring the Department of Highways of the Commonwealth of Pennsylvania to *construct, maintain* or *repair* the side or footwalks in question.

If there is a discretionary power on the part of the Secretary of Highways—and we think there is no such discretionary power vested in him—a writ of peremptory mandamus will not lie. It is clearly the duty of the Highway Department to remove dirt, stones and other impediments cast upon that part of the highway used by pedestrians as a side or footwalk in the construction and maintenance of the cartway, and to fill holes and level off the space outside of the curb. This has been done. The general rule is that courts cannot interpose, by way of injunction or mandamus, to limit or direct the discretion and action of departmental officers in respect to pending matters within their jurisdiction and control: Black v. Woodward, 24 Dauph. 366, 1 D. & C. 205. The work of constructing, maintaining and repairing the roads which constitute the system of State highways has been entrusted by law to the State Highway Commissioner. He is required, in the performance of his duties, to exercise his judgment as to the time of taking over a road and assuming the expense of its care and all other matters involved in the construction and proper maintenance of highways. He cannot be interfered with, nor can his action be controlled by a court unless it clearly appears that he has abused his discretion: Com. ex rel. v. Cunningham, State Highway Commissioner, 19 Dauphin Co. Reps. 432. Mandamus will lie to compel the performance by public officers of duties purely ministerial in their character, but as to all acts and duties necessarily calling for the exercise of judgment and discretion mandamus will not lie: Dechert v. Com. ex rel., 113 Pa. 229; Reese v. Board of Mine Examiners, 248 Pa. 617; Levi v. Oakmont Borough, 44 Pa. Superior Ct. 631, 640. We think, therefore, the relators have failed to establish that there is any duty imposed by statute upon the Department of Highways to construct, maintain or repair the side or footwalk in question, and the writ of mandamus in the alternative form issued by this court must be quashed.

We might here rest the case, as we think our conclusion is supported not only by the great weight, but by all of the authorities in Pennsylvania; but in order that matter litigated may be intelligently reviewed in the event of an appeal to the Supreme Court, we will take up and discuss briefly the several contentions of the relators. First: That the State has not fulfilled its duty in maintaining a highway when it removes and destroys existing sidewalks and makes no provision whatever for safe travel by pedestrians.

It must not be overlooked that the existing foot or sidewalks at the time the Department of Highways improved Lancaster Avenue by extending its width from thirty to forty feet were laid upon the fifty feet right of way of the Philadelphia and Lancaster Turnpike Road, now Route No. 142. The removal of these sidewalks became necessary in order to improve the cartway and extend its width. The relators cannot contend that because they built

these sidewalks they have a right to their continuance even against the action of the Commonwealth, or that the public having used them for a long time, the Commonwealth, through its duly constituted officers, has no right to remove them. Such a contention would not be sound. The mere fact that abutting land owners who encroached upon an unimproved street were assessed and paid taxes upon the land within the limits of the street does not affect the rights of the public therein. The long existence of encroachment upon a public street and inaction by municipal authorities constitutes no defence to a suit by a city for the removal of such encroachments, since the statute of limitations does not run against the public and laches will not be imputed to the municipality in such a case: Pittsburgh *v.* Pittsburgh & Lake Erie R. R. Co., 263 Pa. 294. The title of a municipal corporation to the soil of its streets is paramount and exclusive, and no private occupancy, for whatever time, whether adverse or permissive, can vest a title inconsistent with it: Kopf *v.* Utter, 101 Pa. 27. All rights of the individual in property are subordinated to the sovereign power of the State in the exercise of its right of eminent domain to appropriate such property for its public highways: Snively *v.* Washington Township, 218 Pa. 249. As we have heretofore stated, section 11 of the Sproul Act conferred upon the Superintendent of Highways "all the rights and powers conferred by existing laws on supervisors or commissioners in townships in the construction or maintenance of township roads." In Snively *v.* Washington Township it was further held that supervisors have the whole care and entire supervision of the public highway, and no person, not even an abutting land owner, can make any permanent private use thereof without their consent and approval, and even then subject to the right of the township to discontinue the private use when it is deemed expedient or necessary in order to promote the public use of the highway.

Second: It is complained, further, that in widening Lancaster Avenue the width of the side or footwalk formerly used by pedestrians in Lower Merion Township has been reduced. This is admitted; but, as we have previously stated, the sidewalks were constructed and maintained within the fifty feet right of way of Lancaster Avenue, and, therefore, were an encroachment upon that right of way which belonged to the public. Mere non-user of a turnpike road, or a part thereof, though continued for a long period of years, gives no right to one who has encroached upon it; nor will the abandonment of the road, and its acquirement by the State as a part of its highway system, divest the rights of the public. The rights of the individual are subordinate to those of the State, and no damages for injuries arising from the construction of roads can be awarded unless given by statute, and the procedure therein prescribed must be necessarily followed. A turnpike road will be assumed to have been opened as legally directed, and the centre line of the road as opened upon the ground is the point from which the boundaries are to be determined. The mere fact that the entire width of the road was not immediately occupied does not deprive the public of any part of the road when desired: Lenhart *v.* Wright, Secretary of Highways, 286 Pa. 351.

Again, applying the law, as we have found it to be, to the admitted facts, we think the relators, having constructed the side or footwalks to a width of seven feet, even with the consent of the Philadelphia and Lancaster Turnpike Road Company or its successors, or by direction of an ordinance of the Commissioners of Lower Merion Township, have now no legal ground for complaint if the public requires a greater width for its road or cartway than existed at the time the sidewalks were laid, and which widening thereof

resulted in the destruction of a part of said sidewalks and reduced the width thereof. The Commissioners of Lower Merion Township have the power, by and with the consent of the Secretary of Highways, to ordain new footwalks in the manner provided by the statutes relating to townships of the first class. We think this conclusion is supported by authorities in Pennsylvania and elsewhere: Stevenson's Appeal, 17 W. N. C. 429; O'Neill v. Armstrong, 17 Phila. 273, in which it was held the City of Philadelphia, by an ordinance of councils, can lawfully increase the width of a roadway and narrow the footway of any street previously opened and regulated. An examination of the authorities in other states shows that the decisions are consistent and uniform and in accord with the conclusion we have reached: Brevoort et al. v. City of Detroit, 24 Mich. 322; Bekkedahl v. Village of Westby et al. (Supreme Court of Wisconsin), 140 Wis. 230, 122 N. W. Repr. 727; Jones v. City of Houston et al. (Supreme Court of Texas), 188 S. W. Repr. 688, 689, in which the cases in many states are reviewed by Lane, J.; Town of Marion et al. v. Skillman et al. (Supreme Court of Indiana), 26 N. E. Repr. 676, referring particularly to the opinion of McBride, J., beginning at the bottom of page 679, from which we quote: "In this case the board had determined that public convenience required the grading and paving of the walk. They had required that it be graded to the width of eight feet, and that four feet of the walk thus graded should be paved. If they had decided that public convenience only required the grading of four feet instead of eight, there would have been no ground for interference by the courts. That was a matter which the legislature has left solely to their discretion, and we think that when they have once decided that public convenience requires the grading and paving of eight feet, and it has been done accordingly, they are not thereby precluded from afterwards deciding that the walk is wider than the public needs require, and causing it to be narrowed to meet their changed views."

See, also, Hester v. Durham Traction Co. (North Carolina Supreme Court), 138 N. C. 288, 1 L. R. A., N. S., 981. We quote from the opinion of Clark, C. J., page 985: "An abutting owner to a street and sidewalk has an easement to his frontage which he may use in subordination to the superior rights of the public. Sidewalks are of modern origin. Anciently they were unknown, as they still are in Eastern countries, and in perhaps a majority of the towns and villages of Europe. In the absence of statutes, a town is not required to construct a sidewalk: Attorney-General v. Boston, 142 Mass. 200, 7 N. E. Repr. 722. It is for the town to prescribe the width of the sidewalk. In the absence of statutory restriction, it may *widen,* narrow or even remove a sidewalk already established. To widen the sidewalk narrows the roadway. To widen the roadway narrows the sidewalk. The proportion of the street to be preserved for pedestrians and vehicles, respectively, is in the sound discretion of the town authorities."

We think further citation of authority unnecessary. The discretionary power to widen the cartway of Lancaster Avenue was in the Secretary of Highways; he determined to widen it, which necessarily resulted in making the footway or sidewalk narrower. He cannot be restrained by mandamus from exercising this discretion.

In Chartiers Township v. Langdon, 114 Pa. 541, it was held: "Under the general statute (Act of 1836), should there be dangerous footwalks constructed on the public roads, if the supervisors would not be bound to put them in repair, it would be their duty to remove them without delay." The Secretary of Highways has all of the authority and power of township supervisors, and if authorized to remove a dangerous sidewalk, he would also have

Haverford School et al. *v.* Department of Highways of the Commonwealth.

authority to remove a sidewalk which was occupying a portion of the road needed for the cartway.

Third: We are not favorably impressed by the further contention of the relators that the Commonwealth having obtained the right of way of the Philadelphia and Lancaster Turnpike Road Company by purchase, it took subject to the easements to which the turnpike company had consented that the relators might have; that is to say, having constructed the sidewalks in question with the consent of the turnpike company or its successors, the Commonwealth took the right of way subject to this easement. We think what we have said heretofore with regard to the rights of the public in all of the fifty feet right of way of Lancaster Avenue, now Route No. 142, completely answers this contention in the negative. Immediately upon the taking over of Lancaster Avenue by the Highway Department of the Commonwealth of Pennsylvania on July 16, 1917, all the rights of the turnpike company were extinguished.

## Conclusions of law.

1. The remedy by mandamus is a strictly legal one, and the party invoking it must establish a specific right as well as want of a specific remedy.

2. Mandamus does not lie to compel a public officer to do any official act which the law does not impose upon him, or to discharge the duties of his office in a manner not authorized by law, or to do any official act which the law does not expressly or by implication require such officer to perform.

3. The statutory duty and authority of the Department of Highways of the Commonwealth of Pennsylvania to construct, improve and maintain such highways is limited to the cartway and does not include the construction or repair of sidewalks or sidepaths.

4. By section 11 of the Sproul Act of 1911, the State Highway Commissioner, in addition to the powers conferred upon him, shall enjoy and possess, in the construction and maintenance of highways designated as State highways, all the rights and powers conferred by existing laws on supervisors or commissioners in townships in the construction or maintenance of town roads.

5. Township supervisors or commissioners are not empowered or required to make footwalks or keep them in repair.

6. Sidewalks are a separate class under our law. Under the police power, the owner can be required to lay a sidewalk, and if he fails to do so when requested, legislation has been provided that the township supervisors or commissioners may do it for him and make him pay for it.

7. There is no legislative mandate requiring the Department of Highways of the Commonwealth of Pennsylvania to construct, maintain or repair the side or footwalks in question.

8. The title of a municipal corporation to the soil of its streets is paramount and exclusive, and no private occupancy, for whatever time, whether adverse or permissive, can vest a title inconsistent with it.

9. Supervisors have the whole care and entire supervision of the public highway, and no person, not even an abutting land owner, can make any permanent private use thereof without their consent and approval, and even then subject to the right of the township to discontinue the private use when it is deemed expedient or necessary in order to promote the public use of the highway.

10. The relators have not established their right to the remedy which they seek.

Haverford School et al. *v.* Department of Highways of the Commonwealth.

Accordingly, for the reasons heretofore stated, the writ of mandamus in the alternative form is quashed and a writ of peremptory mandamus is refused. The proceedings are dismissed, at the cost of the relators.

From Homer L. Kreider, Harrisburg, Pa.