# Kopf versus Utter.

1. The title of a municipal corporation to the soil of its streets is paramount and exclusive, and no private occupancy, for whatever time, whether adverse or permissive, can vest a title inconsistent with it.

2. The fact that a property owner has been allowed to fence in several feet of a borough street for over twenty-one years does not defeat the right of the borough to reclaim the street, under an official survey re-establishing the original line; provided the public right has not been compromised by the adoption, by the town authorities, of a street line other than the original.

3. Grading and repairing a street, and allowing property owners to build sidewalks and make other improvements along it, in accordance with an improper location, are not acts which constitute such an official adoption of the wrong line by the borough as will defeat its right to re-establish the original line.

May 23d 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of Warren county : Of January Term 1882, No. 406.

Trespass vi et armis quare clausum fregit, by Martin Kopf, against John C. Utter, and others. Plea, not guilty, with leave, etc.

On the trial, before TAYLOR, P. J., the following facts appeared : The alleged trespass was committed by the borough authorities of Warren, in entering upon plaintiff's premises and moving his front fence back from the street about two feet at one end of his lot, and one foot at the other, in accordance with what the defendants claimed to be the true line of the borough street on which the lot was located.

The plaintiff purchased the lot in question, which was situated on East Street, in the town of Warren, in 1857, and he

[Kopf *v.* Utter.]

alleged that at the time of his purchase there was an old fence in front of it, which he rebuilt in 1860 upon the same line. In 1880, having again removed the fence, he was notified to place the new one on a line pointed out to him by the borough engineer. He disregarded this notice, however, and again built the fence where, as he said, it was located in 1857, when he bought the lot.

Plaintiff further claimed that in 1840 a survey of East Street had been made by two resident surveyors of the town of Warren, and that his fence was placed upon the line established by them. This he held to be the correct line, and he averred that since 1850 the town council had from time to time authorized and required walks and other town improvements to be placed along East Street, which, when built by the property owners in accordance with this survey of 1840, were accepted by the borough.

The defendants, on the other hand, contended that in 1867, finding the streets of the borough irregular and uncertain, the town council employed an engineer to locate High and Water streets, and make the corners of intersecting streets ; and in 1873 East and other streets were thus marked by permanent stones, and an ordinance passed requiring all persons erecting new buildings or fences to conform to the street lines as ascertained by this official survey ; they further claimed that the survey was made by a competent engineer who followed the lines of the streets as laid out by the commissioners in their original plot of the town in 1795. The defendants, therefore, upon the refusal of the plaintiff to build his fence in accordance with said ordinance, removed the same to the official line, and this constituted the alleged trespass for which suit was brought. The plaintiff submitted the following point :

(1) "That if East street was opened some forty years ago, either by the consent or acquiescence of the owners on either side, to the width of sixty feet, that both sides were fenced in whole or in part, and buildings erected and other improvements made by the owners and occupants on both sides, to the lines as designated, for twenty-one years or more, and the street thus located has been worked, graded, and ditched, and sidewalks made by the authority of the burgess and councils for many years, they have no power to change the location of the street, whether it was or was not opened in its proper place, according to the proper plot of the lots and streets of the borough."

Answer. "Affirmed, if you further find that the street was opened and the lines of the same fixed by the borough authorities."

The court, in its general charge, said, inter alia :

"The borough authorities had never acted in it until 1867.

[Kopf v. Utter.]

At that time they employed a surveyor by the name of Pollock, who made a survey of several of the streets in the borough. They took one landmark, one of the old monuments which was fixed in 1795, as the starting-point, and were governed then by the courses and distances as laid down in the official plot, made the surveys of the streets, marked the corners, some of them, by stones set up, and that same line has again been run by Mr. Wood, Doty and Smith, civil engineers, whose testimony you have as to the accuracy with which they have fixed the line of East Street where it runs in front of the plaintiff's lot.

"The result will be arrived at in your answering two questions: First, which was the line of 1795, as located by the original draft? Then, if you find that line to be where the plaintiff's fence was removed to by the borough council; then, if you further find that the borough council have done nothing in their official capacity to induce parties to build out there and occupy for more than twenty-one years, then you will find for the defendants."

Under these instructions the jury rendered a verdict for defendants, upon which judgment was subsequently entered. Whereupon the plaintiff took this writ, assigning for error, inter alia, the answer to his point, and that portion of the charge of the court above cited.

*Wilbur* and *R. Brown* (with whom was *Schnur*), for plaintiff in error.—East street having been opened to the width of 60 feet on its old location, by the consent and acquiescence of the parties interested and of the borough, for over twenty-one years, the power of location was exhausted: Commonwealth *v.* Miltenberger, 7 Watts 450; Holden *v.* Cole, 1 Barr 303; McMurtrie *v.* Stewart, 9 Harris 322; Furniss *v.* Furniss, 5 Casey 15; Ross *v.* Malcom, 4 Wr. 284; Morrow *v.* Commonwealth, 12 Wr. 305. It was the duty of the borough to locate the street originally, but it failed to do so, and acquiesced for many years in a location by private individuals, grading the street, and allowing property owners to improve their lots according to this location. It is now too late to relocate the line of the street, to the injury of such property owners.

*C. H. Noyes* (with whom was *S. T. Allen*), for defendants in error.—The jury found that the plaintiff's fence was in the street, and it was therefore a nuisance which might properly be abated: Rung *v.* Shoneberger, 2 Watts 23. There was no evidence of anything done by the borough authorities to induce persons to build beyond the street lines; yet the question whether they did such an act was distinctly left to the jury, and

found against the plaintiff. Even if the borough had not fixed the street line, and had allowed the plaintiff's fence to remain in the street for over twenty-one years, he could not maintain it there, because the statute of limitations does not affect public rights, and there can be no presumption of a grant against the public: Commonwealth *v.* McDonald, 16 S. & R. 395; Barter *v.* Commonwealth, 3 Pa. Reports 253; Commonwealth *v.* Alburger, 1 Wharton 486; Penny Pot Landing Case, 16 Pa. St. 79; Dillon *v.* Municipal Corp., Sec. 533.

Mr. Justice GORDON delivered the opinion of the court, October 2d 1882.

The question in this case was one involving the location of the west line of East Street, in the borough of Warren, as made by the commissioners appointed to lay out said borough, by the act of the 18th of April 1795, and it was one that could only be determined by the jury.

In 1867 the borough authorities, by their surveyor, endeavored to ascertain and establish this line. This they had an undoubted right to do, and prima facie their survey was the right one, and correctly indicated the boundaries of the street.

But complaint is made of the court below on account of its answer to the plaintiff's first point, which was put as follows: " That if East street was opened some forty years ago, either by the consent or acquiescence of the owners on either side, to the width of sixty feet; that both sides were fenced, in whole or in part, and buildings erected and other improvements made by the owners and occupants on both sides of the lines, as designated, for twenty-one years or more, and the street, thus located, has been worked, graded, and ditched, and sidewalks made, by the authority of the burgess and councils, for many years—they have no power to change the location of the street, whether it was or was not opened in its proper place, acccording to the proper plot of the lots and streets of the borough."

The court affirmed this point, with the following qualification: "If you further find that the street was opened and the lines of the same fixed by the borough authorities."

Now, in the first place, it must be observed that the point is defective in this, that it assumes what is not in the case. There could be neither a consent nor acquiescence, that would at all affect the case, by the adjacent land owners of forty years ago to the opening of a street laid out by the authority of the state some forty-five years before that time, and when the commonwealth was the sole proprietor of the property in controversy. If, indeed, it is intended to assert by this point that the owners of the land, on either or both sides of the street, gained anything by the occupancy of any part of it for the period of forty

[Kopf *v.* Utter.]

years, it was a mistake, for the public right could not be barred by the mere lapse of time. As was said by Mr. Chief Justice GIBSON, in the case of Barter *v.* The Commonwealth, 3 P. & W. 253, the title of a municipal corporation to the soil of its streets, for those purposes that concern the public enjoyment and convenience, is paramount and exclusive; and no private occupancy, for whatever time, whether adverse or permissive, can vest a title inconsistent with it. A recognition of the same doctrine may be found in the cases of The Commonwealth *v.* Alberger, 1 Wh. 469; Commonwealth *v.* McDonald, 16 S. & R. 395; and the Penny Pot Landing Case, 4 Har. 79.

How, then, can fault consistently be found with the answer of the learned judge of the court below? If the public right was not compromised by the adoption, by the borough council, of a line other than the original line of the street, as was the case in The Commonwealth *v.* Miltenberger, 7 Watts 450, that right could not be defeated by the fact that Kopf, and those under whom he claimed, had for more than twenty-one years been allowed to fence in some three feet of the public street. Neither can we understand how the repairing of this street from time to time, or the ordering of sidewalks, can be taken as a recognition, by the borough officers, of the line claimed by the plaintiff, and that in the face of the fact that the council had never authorized any alteration of the line of 1795; on the other hand, certainly intending by the survey of 1867, to discover and adopt it.

The road master would naturally repair the street as he found it, without regard to the original lines, and the lot owner would grade and pave his sidewalks from and to what he considered his line; hence, in neither case would the borough council be consulted. In fact, as we have already said, the only question properly in this case was that involving the original lines of East Street; nevertheless, the court instructed the jury, that if the borough authorities did any thing to induce the plaintiff, or those under whom he held, to build up to the line claimed by him, the borough, after twenty-one years, would be estopped from afterwards disputing it.

In this instruction the plaintiff certainly got all, and perhaps, more than he was entitled to. His case was well and fairly submitted to the jury, and that he did not get the verdict he desired must be attributed to a failure of his proofs, rather than to the want of proper instruction from the court.

The judgment is affirmed.