# Pittsburgh v. Pittsburgh & Lake Erie Railroad Co. et al., Appellants.

*Highways — Equity — Jurisdiction — Parties — Removal of obstructions from public highway—Dedication—Streets—Partition—Road law—Statute of limitations—Payment of taxes—Acts of April 10, 1849, P. L. 584, and May 9, 1889, P. L. 173.*

1. Equity has jurisdiction of a bill for the removal of obstructions from a public street where the question of invasion of public rights depends upon matters of law, like the construction of documentary evidence, or where the evidence is such that the plaintiff would be entitled to binding instructions in an action at law.

2. A number of property owners alleged to have buildings encroaching upon a public street may be joined as parties defendant in a suit for the removal of such encroachments, where there are general features common to all and no party is prejudiced thereby; although there may be special features as to some defendants.

3. The question of multifariousness is one of convenience and rests largely in the discretion of the court.

4. Partition proceedings designating and locating a street as a public street constitute a dedication of such street to the public, especially where followed by many conveyances made with reference thereto.

5. The acts of a city in making reference to a street in numerous ordinances, establishing the grade for it, dumping earth upon it, building and repairing wharves within its lines and granting franchises to railroad companies to construct and operate tracks on it, constitute an acceptance of the dedication of such street.

6. The long existence of encroachments upon a public street and inaction by municipal authorities constitute no defense to a suit by a city for the removal of such encroachments, since the statute of limitations does not run against the public and laches will not be imputed to the municipality in such a case.

7. The Act of May 9, 1889, P. L. 173, relating to unused streets, has no retroactive effect and does not apply to a street that was accepted by the municipality and was in use at least by railroad companies having municipal franchises to operate upon it before the passage of the act.

8. An acceptance and use of part of a dedicated street is effective as to the whole street.

9. The Act of April 10, 1849, P. L. 584, Sec. 15, authorizing owners of lots known as railroad lots in the Borough of East Bir-

mingham to hold and occupy the same to low-water mark in the Monongahela river, provided that there should be secured to the public a right of way along the river bank across such lots, does not prevent the city from opening a street to its dedicated width notwithstanding obstructions erected by such property owners.

10. The mere fact that abutting land owners who encroached upon an unimproved street were assessed and paid taxes upon land within the limits of the street does not affect the rights of the public therein. Although it is evidence, with other facts, to support a claim of abandonment.

Argued Oct. 21, 1918. Appeals, No. 134, 135, 140, 141, 142, 143, 144, and 158, Oct. T., 1918, by defendants, from decree of C. P. Allegheny Co., Jan. T., 1917, No. 2045, in equity, directing removal of obstructions from a public street, in case of City of Pittsburgh v. Pittsburgh & Lake Erie Railroad Company, South Side Gas Company, Julia E. McClure, wife of Thomas McClure, United States Glass Company, John Eichleay, Jr., Company, Pennsylvania Railroad Company, Ormsby Land Company, Oliver O. Phillips et al., Iron City Sand Company, National Tube Company, Jones & Laughlin Steel Company, Pittsburgh, McKeesport & Youghiogheny Railroad Company. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and FOX, JJ. Appeal dismissed.

Bill in equity to establish the existence of South Water street over the lands of the defendants between Seventeenth and Twenty-sixth streets in the City of Pittsburgh, and to compel the defendants to remove encroachments from such street. Before MILLER, J., specially presiding.

The court entered a decree directing the removal of encroachments from the street. Defendants appealed.

*Errors assigned* were the refusal of defendants' requests for findings of facts and conclusions of law and the decree of the court.

*Hill Burgwin,* of *H. & G. C. Burgwin,* for Ormsby Land Company, appellant.—There was no dedication of

Water street over the railroad lots by the proceedings in partition: Cotter v. Philadelphia, 194 Pa. 496.

Where, without judicial proceedings or compensation, or solemn form of conveyance, it is sought to establish in pais a divestiture of the citizen's landed property in favor of the public, the proof ought to be so cogent, persuasive and full, as to leave no reasonable doubt of the existence of the owner's intent and consent: Landis v. Hamilton, 77 Mo. 554.

A court of equity has no jurisdiction over the matters in dispute in this case and the bill should be dismissed: Weiss v. South Bethlehem Borough, 136 Pa. 294; Rhea v. Forsyth, 37 Pa. 503; O'Neill v. McKeesport, 201 Pa. 386; Scanlin v. Conshohocken Borough, 209 Pa. 48.

The bill is multifarious and should have been dismissed: 10 Ruling Case Law 429, Sec. 191; Illinois Steel Co. v. Schrœder, 132 Wis. 561; 14 L. R. A. (N. S.) 239, and note; Washburn's App., 105 Pa. 480.

*Thomas Patterson,* with him *James S. Crawford,* of *Patterson, Crawford, Miller & Arensberg,* for Oliver O. Phillips et al., appellants.—Acceptance is just as necessary as dedication to constitute a public easement: McKee v. Penna. R. R. Co., 255 Pa. 560.

The borough never accepted the alleged dedication.

*George E. Shaw,* of *Reed, Smith, Shaw & Beal,* for appellants.—The City of Pittsburgh has been guilty of such laches in asserting any rights to Water street vested in it under the Ormsby partitions or otherwise that the prayers of this bill must be denied: Commonwealth v. Bala & Bryn Mawr Turnpike Company, 153 Pa. 47; Nesinger et al. v. Clay & Hinkletown Turnpike Co., 203 Pa. 265; Bradford v. New York & Penna. Tel. & Tel. Co., 206 Pa. 582; Commonwealth v. Philadelphia, Harrisburg & Pittsburgh R. Co., 23 Pa. Superior Ct. 235; Pittsburgh Railways Co. et al. v. Carrick Borough et al., 259 Pa. 333;

State ex rel. Rylea v. Janesville Water Power Co., 92 Wis. 496; Adams County v. B. & M. R. Co., 39 Iowa 507.

*B. J. Jarrett,* with him *Stephen Stone* and *H. H. Hanna,* for appellee.—The bill was not multifarious: Rafferty v. Central Traction Co., 147 Pa. 579; Cadigan v. Brown, 120 Mass. 493; First National Bank v. Starkey, 268 Ill. 22.

The use by the railroads under the franchise ordinances was a public use: 32 Cyc. 1255; Lockhart v. The Craig Street Railway, 139 Pa. 419; Prince v. Crocker, 166 Mass. 347.

OPINION BY MR. JUSTICE WALLING, January 4, 1919:

This bill in equity was filed to secure the removal of encroachments upon an alleged public street. The case was heard upon the bill, answer, replication and testimony. The main question was the existence of the street known as South Water street, between Seventeenth and Twenty-sixth streets, Pittsburgh, and that depended largely upon documentary evidence. Many years ago Oliver Ormsby owned the eastern part and John Ormsby the western part of a tract of some 350 acres of land situate on the south bank of the Monongahela river in what is now the City of Pittsburgh. By proceedings in the Orphans' Court the Oliver Ormsby land was partitioned in 1841, and that of John Ormsby in 1844, and a piece lying between the two, about which there had been some controversy as to the title, was also partitioned later in 1844, as land of the Oliver Ormsby estate. Numerous streets are referred to in the partition proceedings and shown on plots accompanying the same, including Water street represented as of the width of one hundred feet, more or less, and extending to the river. Subsequently much of the property was subdivided and passed by sundry conveyances wherein Water street is referred to and called for as a boundary, and some buildings were erected abutting upon the south line thereof.

At the time of the partitions, and for many years thereafter, there was an open coal mine located back from the river on this original tract, from which a railroad extended to the river, where the coal was transferred to boats by means of a coal tipple. This railroad was located in what is now Twenty-first street. There was then a block of lots extending south from the river on the west side of Twenty-first street of the width (east and west) of 147½ feet, known as "the railroad lots," across which Water street was not extended in the first or second partitions above mentioned. The third partition did not include the railroad lots, but it was between parties who owned all the land embraced in the three partitions and they there stipulated that, "The streets and alleys laid out in the plan of the partition of that part of John Ormsby's estate which lies above and adjoining Birmingham, and in the plan of the partition of the two hundred-acre tract belonging to the Oliver Ormsby's estate, have been extended through the piece of land belonging to Oliver Ormsby's heirs, which is included in this partition, and lies between the two pieces above mentioned." The map accompanying that partition seems to show Water street extending across the railroad lots. In 1836, a small piece of this tract abutting on the river had been conveyed to Elias Phillips, a son-in-law of Oliver Ormsby, and that was excluded from the partitions. However, Phillips was a party to the third partition and joined in said stipulation, and in a later conveyance of the Phillips land Water street is called for as its northern boundary. In 1865 a petition was presented to the borough council signed by the owners of that lot and by other property owners praying that the south line of Water street be removed fifty feet northward, which was not granted.

The Borough of East Birmingham, which included this original 350-acre tract, was incorporated in 1849 by an act of the legislature, section 15 of which is: "That the owners of the property known as the railroad lots in

said borough at the terminus of the railroad, and their
heirs and assigns, shall and may hold and occupy the
same to low-water mark in the Monongahela river, and
in case any lots of ground situate on the river fronts of
said borough are or may hereafter be occupied for manu-
facturing purposes, the owners or occupants of such lot
or lots shall have the like right of holding and occupy-
ing the same to low-water mark of said river: Provided,
That in all such cases there shall be secured to the public
a right of way along the river bank across such lot or
lots." Thereafter Water street is referred to in numer-
ous borough ordinances. One orders earth deposited
thereon and others fix the grade of that street. In 1849,
at the request of council, R. E. McGowan, a civil en-
gineer, made a complete map of the borough, whereon
Water street is shown, extending from Seventeenth
street to Twenty-sixth street, of the width of 100 feet,
more or less, to low-water line. However, this map,
which was not recorded but found among McGowan's
papers, shows the lines of the railroad lots extending
across that street to the river. In 1872, the borough be-
came a part of the City of Pittsburgh and Water street
is thereafter referred to in the city ordinances. The city
in 1878 granted a franchise to the Pittsburgh & Lake
Erie Railroad Company to construct a line of railway
upon and along said street; and later granted additional
franchises to railroad companies to construct tracks
therein, which was done; and the tracks so constructed
have been in constant use upon the street here in question
for over thirty years.

That side of the river has been a busy place practically
ever since the land was partitioned as above mentioned.
Wharves, shops, mills, factories, etc., have been and still
are located there, many of which have long encroached
upon and still occupy portions of Water street, so called.
About 1872 the municipality, pursuant to statutory au-
thority, established wharfage charges, which in 1874 it
attempted unsuccessfully to collect from certain parties

occupying the wharves. The borough and later the city made some expenditures in the construction and care of those wharves, but Water street was never formally opened as such nor improved upon the ground as a street. However, it has been used more or less by pedestrians since 1847, and some parts of it also by vehicles, largely in transportation to and from the wharves and other establishments above mentioned. A washout near Eighteenth street has for many years prevented the use of that part of Water street, and further east (up the river) it has always been to some extent obstructed by fences and other obstacles, the part most used for teaming being between Nineteenth and Twenty-second streets. The railroads in Water street are constructed largely upon trestles and so far as they occupy space prevent traffic by other vehicles.

Since about 1880, deeds made of property along the line of Water street so called have included the lands embraced therein as private property; and, such deeds having been placed of record in the office of the recorder of the county, the lands were assessed and taxes thereon, since about 1885, have been paid to the city.

This bill was brought against defendants for separate encroachments upon the alleged street. The chancellor and court below found that Water street was a public highway and entered a final decree for the removal of the buildings and other encroachments thereon (except the railroad tracks placed there by municipal consent); from which defendants brought ten separate appeals which we will consider together. The case was exhaustively presented and we have given it careful consideration, but find no substantial error.

An encroachment upon a public highway is a nuisance which equity has jurisdiction to abate: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; and see Piro v. Shipley, 211 Pa. 36. Where the question of an invasion of public rights depends upon matters of law, like the construction of documentary evidence, equity has undoubt-

ed jurisdiction. See Richmond v. Bennett, 205 Pa. 470; Wilson v. Cather, 214 Pa. 3. When the evidence is such that plaintiff would be entitled to binding instructions in an action at law, equity has jurisdiction: Richmond v. Bennett, supra. Here practically the only controverted question of fact is as to the public use of the alleged street, and in our opinion the dispute as to that is not of controlling importance.

The bill was for the removal of obstructions from a single street, and supported by evidence as to each defendant largely but not in all respects the same, and all were embraced in one decree. So there is no just ground of complaint because each was not sued separately; and the demurrer raising that question was properly overruled. Where a public highway is obstructed by similar acts of neighboring property owners, it is not error to abate the same in one suit, if there are general features common to all and no party is prejudiced thereby, although there may be special features as to some defendants; for example, as to the railroad lots in the present case. See Cumberland Valley Railroad Company's App., 62 Pa. 218; Lovejoy v. Bailey, 214 Mass. 134. In Illinois Cent. R. Co. v. Caffrey, 128 Fed. Rep. 770, the rule is well stated that, "A bill will not be held demurrable for multifariousness because a large number of persons, having no connection with each other, are joined as defendants, where the cause of action against each is the same, and the joinder will save a multiplicity of suits and promote the convenience of the court and of all parties." See also Louisville & N. R. Co. v. Smith, 128 Fed. Rep. 1; Coram v. Davis, 209 Mass. 229, 249; Lenz v. Prescott, 144 Mass. 505; Warren v. Parkhurst, 186 N. Y. 45; Riley v. Pennsylvania Co., 32 Pa. Superior Ct. 579. To save a multiplicity of suits is one ground for equity assuming jurisdiction; and where the chancellor can give each defendant a full hearing there is less reason for separate suits than in jury trials. The question of multi-

fariousness is one of convenience and rests largely in the discretion of the court.

The several partitions showing blocks and streets, including Water street, constituted a dedication of the latter to public use, especially when followed by the many conveyances made with reference thereto. While Water street was not extended across the railroad lots by the first or second partition, we agree with the chancellor that it was by the third. The purpose of the stipulation seems to have been to extend the street across and beyond those lots; and, having been made by all the parties in interest, it should be given effect. In the general plotting of the tract, it is not probable that they would desire to make a permanent break in the broad street along the river front, and no such break appears in the plot accompanying the third partition. McGowan in preparing his plan may have overlooked the stipulation, or misconstrued its effect.

While the chancellor finds that there was an extensive public traffic upon some parts of Water street from 1847 to 1880, yet the city's claim does not rest upon prescription but upon dedication, which to be valid must have been accepted: Philadelphia Museum v. University of Pa., 251 Pa. 125, 132; Commonwealth v. Shoemaker, 14 Pa. Superior Ct. 194. In our opinion the acts of the borough and city, in making reference to Water street in numerous ordinances, establishing the grade thereof, dumping earth thereon, building and repairing wharves within its lines and granting franchises to railroad companies to lay and operate tracks therein, constituted an acceptance of the dedication. And we are still of the opinion expressed in McKee v. Penna. R. R. Co., 255 Pa. 560, that the city's granting permission to the railway companies to construct and operate tracks in Water street constituted an acceptance of the dedication. See Philadelphia v. Thomas's Heirs, 152 Pa. 494. Of course public use alone will constitute an acceptance of a dedicated street,

but we do not base the decision upon that ground because of the question as to the extent of such use.

The long existence of encroachments upon a public highway is no defense, as the statute of limitations does not run against the public: Commonwealth v. Moorehead, 118 Pa. 344; Kopf v. Utter, 101 Pa. 27, 31; Sharon Boro. v. Pennsylvania Co., 44 Pa. Superior Ct. 526. An obstruction in a public highway does not gain a legal status by lapse of time nor by inaction of the authorities with reference thereto. In such case, laches will not be imputed to the Commonwealth nor to the municipality. Laches however may be imputed to a municipality that has stood by and permitted large expenditures to be made upon the faith of an irregular order of court, or of municipal consent informally or tacitly given, where formal consent would have been effective, but this is not such a case.

The Act of May 9, 1889, P. L. 173, "Relating to unused streets, lanes and alleys," does not apply here as it has no retroactive effect: State Road, 236 Pa. 141; Osterheldt v. Philadelphia, 195 Pa. 355; Hileman v. Hollidaysburg Boro., 47 Pa. Superior Ct. 41; and the act applies only to unusued streets: Sturges' App., 240 Pa. 44; while Water street had been accepted by the municipality and was in use at least by the railroad companies, which was a public use, before the passage of the act. An acceptance and use of part of a dedicated street is effective as to the whole, while a street by prescription includes only so much as the public has used for the required time. Prior to that act there was no limit to the time for acceptance of a dedicated street.

As the proviso to the above quoted section of the Act of 1849 secures to the public a right of way along the river bank across such lots, in our opinion the city may now open the street to its dedicated width, for there is nothing in the proviso fixing a less width. The legislative intent may have been to give the abutting owners the right to use land embraced within the lines of the street for manufac-

turing purposes until such time as the municipality desired to open the same to its full width; if so, that would give effect both to the grant and the reservation without legalizing permanent obstructions in the street as dedicated. A statute should not be so construed as to destroy or impair the right it expressly conserves. The act does not purport to vacate the street or any part thereof.

The existence of Water street was not necessarily involved in the suits for wharfage brought in 1874; nor is the city here concluded by the adverse verdicts there rendered. The stipulation in those cases, that the defendants had been in continuous possession of their respective lots as manufacturing plants for thirty years, was consistent with their rights under the above-quoted section of the Act of 1849, but does not preclude the city from ultimately opening the street.

Assessment and payment of taxes do not prove title but are circumstances tending to support a claim of possession: James v. Bream, 263 Pa. 305, filed herewith. And the rights of the public in an unimproved street are not lost because taxes are assessed upon land embraced therein and paid to the municipality by abutting owners. Such circumstances might be considered with other evidence in support of a claim of abandonment; but an encroachment upon a highway cannot be legalized by payment of taxes upon the land so encroached upon.

Appellants should be given ample time and opportunity to remove the obstructions complained of.

The assignments of error in the several appeals are all overruled and the appeals are dismissed at the costs of the respective appellants.