Hershey et al. v. The Brotherhood's Relief and Compensation Fund et al.

*Equity—Equity practice—Parties—Multifariousness—Bonds.*

1. In a bill in equity against a beneficial association and its officers, charging fraud, by a member who is also a creditor, the party plaintiff should set forth affirmatively how he is a member in good standing and in what way he is a creditor. If it appears on preliminary hearing that the bill fails in these essentials, it may be amended.

2. If such bill avers that plaintiff is a bondholder, it should set forth the series and number of the bonds, and, if the bonds are protected by a mortgage, a copy of the mortgage should be attached to the bill, or reference made to where it is recorded.

3. Even though there be no privity between several plaintiffs to a bill in equity, they may join in the bill when they seek to avert an injury which would affect them all in the same manner, although not in the same degree.

4. A bill will not be held multifarious because a large number of persons having no connection with each other are joined as defendants, when the cause of action is the same, and the joinder will save a multiplicity of suits and promote the convenience of the court and of all the parties.

5. A bill against a corporation and its directors for fraud is not fatally defective because it omits as defendants two persons who are no longer directors of the corporation; such persons are not indispensable parties.

6. Such a bill may be filed without previous demand on the corporation, where it is specifically set forth that demand had been made upon the officers and directors for an accounting and had been refused, and, also, where it appears that some of the plaintiffs were not only members, but creditors.

7. A bill is not multifarious in joining two causes of complaint growing out of the same transaction, where all the defendants are interested in the same right, or the relief sought is of the same general nature.

Answer preliminarily objecting to bill of complaint. Answer requesting dismissal of bill of complaint. C. P. Dauphin Co., Equity Docket, No. 835.

*W. Justin Carter, Sr.,* and *W. Justin Carter, Jr.,* for plaintiffs.

*J. Dress Pannell* and *Michael E. Stroup,* for defendants.

WICKERSHAM, J., Jan. 3, 1927.—The plaintiff, Isaac H. Hershey, a creditor and member, and the other plaintiffs as creditors and bondholders of the defendant corporation, alleging that the defendant officers of the corporation

conspired, confederated and agreed to use and employ their management and control thereof for their individual use and benefit, and, by virtue thereof, to take, convert and misapply the funds and assets of said corporation for their own individual accounts; and to require, demand and receive payments for themselves for the making of contracts for the said corporation with other persons; to receive, extort and obtain by way of gift, contribution or otherwise to themselves, personally, and certain of them, certain sums of money or other valuable considerations; and by virtue of, and in consequence of, said conspiracy and agreement have diverted to their own uses and to the uses of certain of them large sums of money and property of the corporation; and, further, alleging gross mismanagement of the affairs of said defendant corporation, as a result of which it is now insolvent within the equitable rules, unable to meet its obligations as they become due, to pay benefits to its members, to pay the interest on its bonds, to meet its obligations to bondholders and to members holding certificates of investment and certificates of exchange and the interest thereon, and notes of the corporation and interest thereon; pray for an accounting, discovery, the appointment of a receiver and other equitable relief.

The defendants, Luther G. Smith, international president, and D. W. B. Murphy, international secretary-treasurer, severally and individually and for and on behalf of each of the other defendants, have filed an answer preliminarily objecting and protesting to the whole of said bill of complaint, for the reasons that it is defective and multifarious, vague and indefinite and lacking necessary parties.

The said defendants also filed an answer requesting dismissal of the bill of complaint, for the reasons that it fails to show, as a question of law, a sufficiently good cause of action to warrant and entitle the relief sought, and that it fails in the matter of substance.

In approaching a consideration of the very many matters of objection pressed by counsel for the defendants, we must regard all allegations contained in the bill of complaint which are properly pleaded to be admitted.

It appears, therefore, that the defendant, the Brotherhood's Relief and Compensation Fund, was organized and incorporated for the purpose of "the maintenance of a society for beneficial and protective purposes to its members from funds collected therein," under the Act of Assembly of the Commonwealth of Pennsylvania approved April 29, 1874, P. L. 73, and its supplements, on March 16, 1914. It has its principal office and place of business in the City of Harrisburg. The object of the corporation is the establishment and management of a fund for the payment of fixed and definite amounts to the *bona fide* members thereof in the case of "loss of position," "loss of position but retained in the service of the employer," "suspension" or "retirement." The membership of defendant corporation consists of persons selected from various railroad brotherhoods. The funds of defendant corporation are derived from application fees, dues of members and such assessments as are from time to time made. It has 8000 members, and every member in good standing, after certain fixed and continuous membership, is entitled to the payment from the funds of the corporation of fixed and definite amounts in cases of loss of position, etc. The officers of the defendant corporation consist of an international president, assistant international president, international secretary-treasurer and board of trustees composed of five members. The present officers are the defendants named in the bill of complaint.

It is alleged, and not denied in the answer, that the defendants, Smith, Murray, Murphy, Fox and Nolan, conspired, confederated and agreed to and

among themselves, and with others, to use and employ their management and control of said corporation for their individual use and benefit and, by virtue thereof, to take, convert and misapply the funds and assets of said corporation for their own individual accounts; to require, demand and receive payment for themselves for making contracts for the said corporation; that they conspired to receive, extort and obtain, by way of gift, contribution and otherwise to themselves personally, and certain of them, certain sums of money and other valuable considerations, and by virtue of, and in consequence of, said conspiracy and agreement that they have diverted for their own use, and to certain of them, large sums of money and property of the corporation. That in order to keep the knowledge of these delinquencies from the association, the above named defendants expelled and deprived of their rights, privileges and membership in said corporation certain of its members who tried to advise, inform and make known to the other members thereof the fraud, mismanagement and conspiracies of the said Smith, Murray, Murphy, Fox and Nolan.

It is also alleged that, in 1921, the officers and board of directors loaned to themselves various sums of money of the corporation with which each said director could purchase a home. In pursuance of said arrangement, the defendant J. A. Fox received $7000 of the money of the corporation, with which he purchase a home in Pitcairn, Pa., taking title in his own name. The defendant George W. Nolan received $3600 of the money of said corporation, with which he purchased a home in Trenton, N. J., taking title in his own name. The plaintiff Baltosser also received $5500 of the money of the corporation, with which he purchased a home in Harrisburg; he has repaid the said organization the principal sum so received. The defendant Smith, international president, received $16,000, with the aid of which he purchased a home near Harrisburg. The defendant Murray, assistant international president, received $15,500 of the money of said corporation, with the aid of which he purchased a home in Buffalo; and the said W. D. B. Murphy, international secretary-treasurer, received $7400 of the money of said corporation, with the aid of which he purchased a home in Camp Hill, Pa., taking title in his own name. Other directors received sums for similar purposes, as set forth in the bill of complaint. The defendants receiving the aforesaid sums agreed to pay 3 per cent. interest, and agreed to repay the principal sum at the rate of 6 per cent. monthly. The board of directors constituted the defendant Luther G. Smith trustee of the sinking fund, into which was deposited the several amounts repaid by the said directors on account of the principal sum and interest received by them, but this action of the board of directors was not entered upon the minutes, nor was the sinking fund ever explained to the membership. As security for the repayment of these loans, life insurance upon the life of each of the aforesaid was obtained in the sum of the amounts so received, and the premiums upon said policies of life insurance, amounting to approximately $6000, were paid annually out of the treasury of the Brotherhood's Relief and Compensation Fund, and, it is alleged, said premiums in 1923 amounted to $12,625.86. Policies of life insurance were also, by direction of President Smith, issued to other persons not members of the association, the beneficiary named in said policies being Brotherhood's Relief and Compensation Fund, and premiums on said policies are being paid, and have been paid, from the funds of the Brotherhood's Relief and Compensation Fund.

A demand has been made upon the officers and directors of the corporation to have an audit of the accounts of the corporation made and to have fixed

and determined what sums have been expended, advanced, paid to or given or paid for and given to the various officers of the corporation and to persons by law not entitled thereto, but the said directors and officers of the corporation have refused, and still refuse, so to do.

At the triennial convention of the corporation held in Buffalo in 1922, the board of directors were authorized to make necessary arrangements for the erection of a building in the City of Harrisburg, to be known as "Brotherhood's Relief and Compensation Fund New Home and Bank Building," together with banking facilities, convention halls, stores and apartments. For this purpose a plot has been purchased at the northeast corner of Maclay and Sixth Streets in the City of Harrisburg. Buildings were erected upon this plot, which the board of directors proceeded to have removed. It is alleged that the defendant Smith, with the knowledge and connivance of the board of directors, caused and permitted the materials from said buildings to be used in the erection of buildings on land that did not belong to the corporation; that the labor for the erection of said buildings was paid for by the defendant corporation, and a large part, if not all, of the new material for the erection of said houses was also paid for by said defendant corporation; that thereafter said houses were transferred by Edith M. Sollenberger and M. G. Sollenberger, her husband, who was the contractor for said corporation, in consideration of $14,000, to Luther G. Smith, trustee.

It is further averred that large amounts of building material, old and new, belonging to said corporation, have, with the knowledge and connivance of the defendant, Luther G. Smith, been taken and used in the erection of other buildings in which the defendant corporation has no interest; that material was ordered and delivered to building operations other than the building operations of the Brotherhood's Relief and Compensation Fund New Home and Bank Building at Sixth and Maclay Streets, to which building operations said corporation has no title, the bills for which were paid from the funds of said corporation by Luther G. Smith, international president, with knowledge and connivance of the board of directors; that materials purchased for use in construction of the said New Home and Bank Building were removed from storage with the knowledge and connivance of Luther G. Smith, international president, and the board of directors and used in the erection of other buildings in which said corporation has no lawful interest or title; that certain cement, purchased with money and funds of the defendant corporation and placed in a storage warehouse, was appropriated by the defendants in large quantities to their own use and to the use of other persons than the said defendant corporation, and used, or caused to be used, in the building and construction of buildings not owned by the defendant corporation. That the defendants took large quantities of reinforced steel from the storage-house of the defendant corporation and caused the same to be loaded on a truck belonging to M. G. Sollenberger, employed to build said Home and Bank Building, and was hauled away from the property of the said corporation, and some of the said steel was transported to York, where the same was used in the construction of a garage at said place.

It is further alleged that false, fraudulent and untrue statements of the accounts of the corporation were issued and published and submitted to the members of said corporation, an itemized account of which appears in paragraphs 46 to 55, both inclusive, also in paragraph 59 of the bill of complaint.

It is further alleged that the defendants, Smith et al., were guilty of gross mismanagement in the erection and construction of said New Home and Bank Building, as more specifically appears in paragraphs 56, 57, 60 and 61 of the

bill of complaint, that numerous expenditures were omitted in the statement heretofore referred to, which appear in paragraph 62 of said bill.

That the issuance of bonds on the part of the board of directors of the defendants was not authorized by the triennial convention held in Buffalo in 1922, but, notwithstanding that fact, said board of directors did authorize bonds in the amount of $900,000 to be issued and sold to pay the expenses of the erection thereof, more fully set forth in paragraphs 63, 64 and 65 of the bill of complaint.

That, in pursuance of the resolution of the triennial convention at Buffalo authorizing the erection and construction of said New Home and Bank Building of said corporation, the estimated cost was to be $700,000 or $800,000. The board of directors employed an architect, purchased materials not immediately needed in the erection of said buildings for many months after delivery, by which large sums of money have been unnecessarily and wastefully expended, as more fully appears in paragraph 67 of the bill of complaint. That the board of directors on June 22, 1923, placed a mortgage upon the aforesaid property of the Brotherhood's Relief and Compensation Fund in the sum of $1,200,000, which was executed to secure bonds composed of two series, the proceeds of the sale of which were to be used, in connection with other funds of the organization, in financing the erection of said building, and that interest on said bonds and money borrowed on notes of the corporation, certificates of exchange and certificates of investment issued for assessment paid in full is being paid out of dues and assessment from the members, further depleting the assets of the corporation.

That sufficient funds have not been realized by the sale of said bonds to meet the expenses of the erection of said New Home and Bank Building, and $178,245.74 has been taken from the general fund of the organization, which so depleted said fund that the said defendants are now compelled to transfer from the building fund $25,000 to meet the organization expenses, and to further make up a deficit in the building fund, $59,500 was borrowed on the notes of the corporation.

That the corporation has approximately 8000 members, from whom the defendants have collected in assessments from Jan. 1, 1924, to Oct. 1, 1926, the amount of $264,000, and a further sum of $20,000 has been collected from 400 members who paid their assessments in full. Dues have been collected from these 8000 members amounting to $12,000 per month, or $396,000, and no account of these assessments and dues has been given to the members and creditors of said corporation. Other discrepancies in the accounts of the association are fully set forth in paragraphs 78 and 79 of the bill of complaint.

That members have purchased certain bonds which the defendant Luther G. Smith refused to deliver to them. That because the defendants took from the general fund of the corporation the aforesaid sum of $178,245.74, said fund is so depleted that the defendant is unable to meet its obligations as the same fall due, whereupon the board of directors adopted a resolution authorizing an assessment of $1 per month, the assessment to be continued until each member has paid the sum of $50 in assessments, in return for which the member was to receive a certificate bearing interest at the rate of 5 per cent. per annum after a complete payment of the assessments. That the board of directors "is only authorized . . . to levy an assessment to pay benefit claims, and as a large part of the membership had failed to subscribe to the aforesaid . . . bonds, the board of directors undertook to do indirectly that which they could not do directly"—by applying the money in the general fund, derived from dues paid by the members of the corporation to the building fund of the

New Home and Bank Building, which they then attempted to reimburse by levying the aforesaid assessment to provide a general fund with which to pay benefit claims, all of which is more fully set forth in paragraphs 83, 84, 85 and 86 of the bill of complaint.

It is also alleged that, under the laws, by-laws and regulations of the corporation, the defendants will remain in charge of its affairs until the next triennial meeting of the members of the corporation, which will not be held until the month of August, 1928; and unless the relief sought in the bill of complaint is granted, the plaintiffs and others similarly situated will have suffered loss of all the assets available for the payment of indebtedness to them and the loss of all the sums contributed for the protective fund contemplated by the charter, and also the value of bonds held by plaintiffs and others, long before said next triennial meeting of the said corporation shall have assembled, to which plaintiffs might apply for relief.

That the defendants employed M. G. Sollenberger as contractor to do certain work in the building and construction of the said New Home and Bank Building, and thereafter bought and paid for tools necessary for the use of said M. G. Sollenberger, and also paid the liability insurance for the said M. G. Sollenberger; and that all of said payments were made out of the funds of defendant corporation; also, that the defendants employed E. J. Fogarty as a sub-contractor to do certain work in and about the construction of said Home and Bank Building, and paid out of the funds of the defendant corporation for the tools necessary to perform the work which he contracted to do. That the defendants employed W. Arthur Wilson to print a magazine for the said defendant corporation, and paid out of the funds thereof amounts necessary to purchase for him linotype machines and other equipment and tools necessary to carry on his printing business which the said Wilson conducts and maintains independent of any work done for the Brotherhood's Relief and Compensation Fund.

Having in mind the many allegations of the misstatement of the accounts of the association and gross mismanagement of its affairs on the part of the defendants, we will now proceed to consider the several contentions contained in the answers.

"First. That the bill of complaint is defective and multifarious, in that all the defendants are not interested in all of the causes of action set forth in the bill of complaint." The reason given for this objection is that the plaintiff Isaac H. Hershey claims to be a creditor and member in good standing, and that he has not shown that he is actually a creditor and a member of the Brotherhood's Relief and Compensation Fund, or that he has such an interest in the subject-matter of the bill of complaint which will entitle him to the relief for which he prayed.

We think there is some merit in this contention. It is not necessary that the bill of complaint should set forth in detail the evidence to sustain the plaintiffs' case. The best test of what are proper averments of fact in the bill is whether they are such matters as the witness may be called upon to prove, or the truth of which must be established by evidence to enable the court to act: Caveny v. Curtis, 29 Montg. Co. Law Repr. 202, citing Adams's Equity (8th ed.), 302, note 3. It is unnecessary to make a formal averment of a conclusion if complainant avers facts from which the conclusion must follow: Gilkeson v. Thompson, 210 Pa. 355. It is necessary, however, that every averment necessary to entitle the plaintiff to the relief prayed for must be contained in the stating part of the bill, and may not be supplied by inference or by a reference to some other part of the bill: Thompson's Appeal, 126 Pa.

367. The plaintiff may amend his bill in order to show that section of the by-laws defining what constitutes a member in good standing in the defendant corporation, and also how the plaintiff Hershey becomes a creditor thereof: Gray v. Philadelphia & Reading Coal and Iron Co., 286 Pa. 11.

We think, also, that the plaintiffs' bill should be amended in order that it may aver, if the plaintiffs are bondholders, the denomination, the series and the number of the bonds, and if the plaintiffs other than Hershey are creditors, the bill should state in what manner they are creditors (Craig v. Craig, 264 Pa. 380, 383), otherwise the bill must fail, not because of plaintiffs' character as parties to the bill, but because they have not stated things it is necessary they should prove in a creditor's bill filed against a corporation. A mere reference to the plaintiff as a creditor in the caption of the bill is insufficient; there must be a specific averment in the bill itself of the facts showing the plaintiffs' interest in the subject-matter of the suit: Holton v. Newcastle Ry. Co., 138 Pa. 111.

We think the plaintiffs' bill is not multifarious for the reasons set forth in defendants' first objection. If amended in the manner we have indicated, it will show all the plaintiffs have a common interest in the relief sought; the cause of action is the same and the joinder will save a multiplicity of suits and promote the convenience of the court and all the parties. To save a multiplicity of suits is one ground for equity assuming jurisdiction, and where the chancellor can give each defendant a full hearing, there is less reason for separate suits than in jury trials: Pittsburgh v. Pittsburgh & Lake Erie R. R. Co., 263 Pa. 294, 301; Gray v. Philadelphia & Reading Coal and Iron Co., 286 Pa. 11. Even though there be no privity between several persons, they may join in a bill when they seek to avert an injury which would affect them all in the same manner, although not in the same degree: Riley v. Penn. Co., 32 Pa. Superior Ct. 579; Groff and Pritchard v. Lancaster S. Mill Corp., 39 Lanc. Law Rev. 237; Rafferty v. Central Traction Co., 147 Pa. 579; Morel v. Scranton Coal Co., 15 Lacka. Jurist, 126; 16 Cyc., 249.

For the same reason we must overrule plaintiffs' second preliminary objection, which is that "The said bill of complaint is defective and multifarious, in that the liability for all the causes of action set forth in said bill of complaint cannot be asserted against all the defendants, and no adequate reason appears why said causes should be joined in order to promote the convenient administration of justice." A bill will not be held demurrable for multifariousness because a large number of persons having no connection with each other are joined as defendants, when the cause of action is the same and the joinder will save a multiplicity of suits and promote the convenience of the court and all the parties: Gray v. Philadelphia & Reading Coal and Iron Co., 286 Pa. 11.

It is contended, however, that some of the plaintiffs claim relief as bondholders of the defendant corporation; that said bonds are secured by a mortgage, and that a copy of said mortgage is not attached to plaintiffs' statement, nor is any reference made to its place of record. We think the plaintiffs' bill should be amended, either by attaching a copy of the mortgage to and making it a part of the bill, or by reference to the place where it is recorded: Wagner v. Philadelphia, etc., R. R. Co., 233 Pa. 114, 119, 120; Haneman v. Pile et al., 161 Pa. 599.

It is further objected: "Third. That the said bill of complaint is defective for want of specifically named parties, in that A. McKee and Virgil Wells, members of the Board of Directors of the Brotherhood's Relief and Compensation Fund, who are indispensable parties defendant, having an interest in

the subject-matter of the said bill of complaint and liable to the demands of the plaintiffs, which is the groundwork thereof, have not been joined as parties defendant to said bill of complaint." It appears from the allegations in the bill that McKee and Wells are no longer members of the board of directors. How, therefore, could they be called upon to render an account? The records of the corporation must certainly be in the custody of its officers and directors. We fail to understand, therefore, how the failure of the plaintiffs to include the said former directors of the defendant corporation, Wells and McKee, as defendants, constitutes a fatal defect in plaintiffs' bill, or that said failure is legally objectionable. The rule which requires all the parties in interest to be brought before the court does not affect the jurisdiction, but is subject to the discretion of the court and may be modified according to circumstances. An indispensable party is one who has such an interest in the subject-matter of a controversy that a final decree between the parties before the court cannot be made without injuriously affecting his interest or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience: 20 Ruling Case Law, 668; Hartley *v.* Langkamp, 243 Pa. 550. How can it be said that this rule applies to the said McKee and Wells? They are no longer directors; they could not render an account if, upon final hearing, we decide an account to be necessary. We think this contention is unsound and cannot be sustained.

The fourth preliminary objection which was most strongly stressed by counsel for the defendants alleges "That the said bill of complaint is vague and indefinite, in that the facts alleged and stated therein are so insufficiently averred that it is impossible for the defendants to answer the said bill of complaint" for the reasons given. We have carefully considered these reasons, twenty-four in number, with numerous sub-sections. They refer to the various allegations of fact contained in the ninety-three paragraphs of plaintiffs' bill of complaint. To consider them specifically, we think unnecessary. The burden of the many complaints seems to be that the plaintiffs have not alleged the evidence by which they propose to establish the several allegations in the bill of complaint. This is unnecessary. We do not propose to pass upon the merits of the several allegations contained in plaintiffs' bill; that can wait until the answer comes in and until final hearing.

It is further contended that the bill must fail as a matter of law because it does not show a demand upon the corporation to institute proceedings. Counsel for defendants first attempts to demonstrate that plaintiffs' bill is a stockholder's bill, and, therefore, does not comply with Rule No. 37 of the Equity Rules. This contention must fail for two reasons: First. This is not a stockholder's bill, but a creditor's bill, and, therefore, Rule No. 37 of the Equity Rules does not apply; and, secondly, it overlooks paragraph 30 of plaintiffs' bill of complaint, which is as follows: "Demand has been made upon the officers and directors of the corporation to have an audit of the accounts of the corporation made and to have fixed and determined what sums have been expended, advanced, paid to or given or paid for and given to the various officers of the corporation and persons by law not entitled thereto, but the said directors and officers of the corporation have refused, and still refuse, so to do."

It is further contended that the bill of complaint itself is multifarious because of misjoinder of parties, which we have heretofore disposed of, and for the further reason that it is predicated upon different grounds and subject-matter which are joined therein and the liability for all the causes of action cannot be asserted against all the defendants. Multifariousness has been

frequently defined as consisting of improperly joining in one bill several distinct and independent matters and thereby confounding them, as, for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant or the demand of several matters of a distinct and independent nature against several defendants in the same bill: 21 Corpus Juris, § 427, page 408. A bill is not multifarious in joining two causes of complaint growing out of the same transaction, where all the defendants are interested in the same right or the relief sought is of the same general nature: Cumberland Valley R. R. Co.'s Appeal, 62 Pa. 218. The question of multifariousness is one of convenience and rests largely in the discretion of the court: Pittsburgh *v.* Pittsburgh & Lake Erie R. R. Co., 263 Pa. 294; Prudential Loan Society *v.* Mayer et al., 25 Dist. R. 885, 891; 16 Cyc., 240.

An analysis of the many paragraphs in the plaintiffs' bill of complaint leads us to the conclusion that, if proven, they will establish gross mismanagement on the part of the officers and directors of the defendant corporation, tending ultimately to the dissipation of its funds and assets to the great damage of the financial interests of the plaintiffs.

Therefore, applying the principles announced in the authorities from which we have quoted to the allegations contained in the bill of complaint in the instant case, we are of the opinion that said allegations do not offend against the well-established rule relating to equity pleading. We are of the opinion, further, that the plaintiffs' bill should be amended in the manner indicated by us; if it is so amended within fifteen days from the filing of this opinion, the preliminary objection to the bill of complaint and the answer requesting dismissal of the bill of complaint are all overruled, and the defendants are directed to answer the allegations contained in the bill within thirty days after it is properly amended. If the plaintiffs do not so amend the bill within fifteen days of the filing of this opinion, the preliminary objections raised by the defendants are sustained and the bill is dismissed.

From Homer L. Kreider, Harrisburg, Pa.