## Heinel Motors, Inc., v. Motor Vehicle Dealers' Commission

*Schnader & Lewis*, for plaintiffs.

*Charles J. Margiotti*, Attorney General, *William H. Wood* and *George W. Keitel*, Assistant Deputy Attorneys General, and *John J. Connelly*, Special Deputy Attorney General, for defendants.

RICHARDS, P. J., specially presiding, November 22, 1938.—The bill filed in this case seeks to restrain defendants, acting as the Motor Dealers' Commission of the Commonwealth of Pennsylvania, from enforcing against the plaintiffs the Motor Vehicle Dealers' Commission Law of July 1, 1937, P. L. 2465, upon the ground that the act is unconstitutional. A temporary injunction was granted which was finally continued until further order of the court. An answer was filed raising preliminary objections, all other matters being eliminated by a stipulation of counsel. The answer avers: (1) That the bill is multifarious as to parties plaintiff; (2) that there is an adequate remedy at law; and (3) that there is a full and complete defense which does not require the production of evidence to sustain it, namely, that the act is constitutional. The case was argued before the court in banc and the preliminary objections must now be disposed of.

1. Is the bill multifarious as to parties plaintiff?

All the plaintiffs are automobile dealers in this State. They all deal in used cars and two of them deal in new cars. The act in question affects them all in a common manner and the relief sought by each is identical and based upon the same reasons. A multiplicity of suits may be avoided by having them join in a single action and such

joinder affords a convenient method of settling the dispute. As was said by this court, in an opinion by Judge Wickersham:

"To save a multiplicity of suits is one ground for equity assuming jurisdiction, and where the chancellor can give each defendant a full hearing, there is less reason for separate suits than in jury trials . . . Even though there be no privity between several persons, they may join in a bill when they seek to avert an injury which would affect them all in the same manner, although not in the same degree": Hershey et al. v. The Brotherhood's Relief & Compensation Fund et al., 9 D. & C. 167, 173.

Mr. Justice Kephart, speaking for the Supreme Court, used substantially similar language:

"Where distinct and independent causes of action are joined in one bill, or several parties not connected with the controversy in its legitimate scope are joined, a bill in equity is multifarious. But, if the court, in its discretion, believes the joinder in one suit of different matters or parties will promote the convenient administration of justice, the bill will be sustained. See Rule 36, Equity Rules: Pittsburgh v. Pittsburgh & L. E. R. R. Co., 263 Pa. 294, 301": Komenarsky, Receiver, v. Brode et al., 307 Pa. 156, 158.

It seems clear, therefore, that there is no impropriety in joining the parties plaintiff, and that it serves a useful purpose and affords an adequate hearing to both plaintiffs and defendants. This objection is accordingly overruled.

2. Do plaintiffs have an adequate remedy at law?

It is true that plaintiffs could defend any prosecution brought against them for violation of the act, raising constitutional or other defenses. See section 9. However, this would afford no adequate remedy for the harm done to their business. If, during the pendency of such criminal proceedings, they were deprived of their means of livelihood, we know of no way in which they could recoup

their losses. We further believe that, where property rights are affected, they are not bound to wait until they are prosecuted. They may seek equitable relief before irreparable harm is done. The right to pursue a legitimate occupation is a property right. See Panama Refining Co. et al. v. Ryan et al., 293 U. S. 388, 414, Martin v. Baldy, 249 Pa. 253, 259, and Heasley et al. v. Operative Plasterers & Cement Finishers International Assn., etc., et al., 324 Pa. 257, 260.

We feel that plaintiffs have no adequate remedy at law and this objection is overruled.

3. Is the act constitutional?

Section 15 of the act authorizes the commission, after a survey and consideration of reports, to establish the price or trade-in allowance of used automobiles. The price or allowance so fixed, after being decreased by the cost of necessary repairs, is to prevail for the ensuing 30 days. It is the maximum price that may be allowed. Section 17 provides that new automobiles may not be sold at less than the manufacturer's advertised price plus transportation charges. There are certain exceptions which are not now of moment. In effect, the act fixes the price of new and used automobiles. It deprives the dealer of the right to contract for the trade-in or sale of new or used cars upon his own terms. It is contended that in this respect the act violates sections 1, 9, and 26 of article I of the Constitution of Pennsylvania and Amendment XIV to the Constitution of the United States.

As a general proposition, the legislature has no right to fix prices, unless the business is affected with a public interest.

"It is settled by recent decisions of this Court that a state legislature is without constitutional power to fix prices at which commodities may be sold, services rendered, or property used, unless the business or property involved is 'affected with a public interest' ": Williams, Commr., etc., et al. v. Standard Oil Company of Louisiana, 278 U. S. 235, 239.

The Supreme Court in this State has held substantially the same thing:

"The first, second, third and fourth sections of the Act . . . are utterly unconstitutional and void, inasmuch as by them an attempt has been made by the legislature to do what, in this country, cannot be done; that is, prevent persons who are *sui juris* from making their own contracts": Godcharles & Co. v. Wigeman, 113 Pa. 431, 437.

"Where a statute or ordinance interferes with the use and control of property without rational relation to public safety, health, morals or general welfare, or is a palpable invasion of rights secured by the fundamental law, the enactment cannot be sustained as a legitimate exercise of police power": White's Appeal, 287 Pa. 259, 268.

Whether or not a business is affected with a public interest is for the courts to determine.

"It is manifest . . . that the mere declaration by a legislature that a business is affected with a public interest is not conclusive of the question whether its attempted regulation on that ground is justified": Chas. Wolff Packing Co. v. Court of Industrial Relations of The State of Kansas, 262 U. S. 522, 536. To the same effect see Tyson & Brother, etc., v. Banton, etc., et al., 273 U. S. 418, 431.

Nothing has been called to our attention which satisfies us that the automobile business is affected with a public interest. The mere size of the business does not determine the matter. However, the size of the automobile business in this State is relatively small upon a percentage basis, as is shown by the statistics made a part of the record by agreement of counsel. The value of automobiles manufactured is about one and one third percent of the total value of manufactured products; the number of persons employed therein has never exceeded three fourths of one percent of the total employes,

and their wages have never exceeded one percent of the total wages. In size or scope the business is not so large as the gasoline business which has been declared not affected with a public interest.

"In support of the act under review it is urged that gasoline is of widespread use; that enormous quantities of it are sold . . . and that it has become necessary and indispensable in carrying on commercial and other activities within the state. But we are here concerned with the character of the business, not with its size or the extent to which the commodity is used. Gasoline is one of the ordinary commodities of trade, differing, so far as the question here is affected, in no essential respect from a great variety of other articles commonly bought and sold by merchants and private dealers in the country. The decisions referred to above make it perfectly clear that the business of dealing in such articles, irrespective of its extent, does not come within the phrase 'affected with a public interest.' Those decisions control the present case": Williams, Commr., etc., et al. v. Standard Oil Company of Louisiana, supra, 240.

This conclusion has been followed by this court in the case of Scudder, etc., v. Smith, et al., 45 Dauph. 209, and Sperry & Hutchinson Co. v. Boardman et al., 33 D. & C. 571.

It seems to us that nothing exists with reference to the sale or trade-in of automobiles to affect said business with a public interest. We see nothing here which affects the public in a greater degree than any of the commodities in common use. If prices may be fixed for automobiles, we see no reason why they may not be fixed for any of the ordinary necessities of life.

We conclude that the automobile business is not affected with a public interest and that the legislature is without power to enact legislation resulting in the fixing of prices of new or used automobiles. The attempt to do

so deprives plaintiffs of the right to acquire, possess, and protect property and pursue their own happiness, deprives them of property without the judgment of their peers, and takes away the rights reserved to them and excepted out of the general powers of government, in violation of sections 1, 9, and 26 of article I of the Constitution of Pennsylvania. It further deprives plaintiffs of property without due process of law in violation of the fourteenth amendment to the Constitution of the United States of America. For these reasons the act is unconstitutional.

At the argument, counsel for the respective parties agreed that, should the court decide that section 15 of the act is unconstitutional, the whole act would fall. This is especially provided for by section 21 of the Motor Vehicle Dealers' Commission Law, supra, which reads as follows:

". . . if any part or parts of this act relating to fixing the value for used motor vehicles or the amount to be allowed by motor vehicle dealers for used motor vehicles is held unconstitutional, then the remainder of the act shall be given no effect."

It is the understanding of the court that the matter is to be disposed of as on final hearing. Since, in view of our conclusions there would be no point to allowing an answer to be filed upon penalty of having the bill taken pro confesso, we will dismiss the objections and make the injunction permanent.

### Decree

And now, to wit, November 22, 1938, the preliminary objections are dismissed and defendants, William D. Teefy, Leo J. Spaeder, William R. Tucker, Jr., William A. Gallagher, and Ollie Flotzinger, members of the Motor Vehicle Dealers' Commission of the Commonwealth of Pennsylvania, are hereby permanently enjoined and restrained from enforcing the provisions of the Motor Vehicle Dealers Commission Law.